John M. **KERSHNER**, Petitioner,

v.

Otto C. **BOLES**, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 1166–W.

United States District Court
N. D. West Virginia,
at Wheeling.

Jan. 4, 1963.

George N. Caravasios, Wheeling, W. Va., for petitioner.

Andrew J. Goodwin, Asst. Atty. Gen., for respondent.

CHARLES F. PAUL, District Judge.

As the result of a jury verdict of guilty in a trial conducted in the Circuit Court of Fayette County, West Virginia, concluded March 11, 1959, the petitioner, John M. Kershner, was convicted of the crime of grand larceny and committed to the custody of the respondent. The applicable statute provides for a sentence, indeterminate in nature, of 1 to 10 years for the crime of grand larceny. As the result of an information charging a prior conviction for a felony, filed by the Prosecuting Attorney after the trial, the peti-

tioner, on March 17, 1959, was sentenced to an indeterminate term of 1 to 15 years.

The petition alleges a number of errors committed by the trial court, such as the failure to grant a continuance for the purpose of obtaining witnesses, the admission of letters written by the petitioner while he was in custody, in which he admitted prior crimes and other matters calculated to inflame the jury; the failure to sustain motions to quash a defective indictment; the admission of other incompetent evidence; improper argument by the Prosecuting Attorney; and of failure to set aside the verdict upon motion for the insufficiency of the evidence. All of these present State questions reviewable upon direct appeal, not Federal constitutional questions susceptible to indirect attack by way of Federal habeas corpus proceedings.

However, there are presented three issues involving aspects of the "due process" and "equal protection" provisions of the Fourteenth Amendment, as follows:

(1) Whether the conviction was obtained upon evidence secured by unreasonable and unlawful search and seizures;

(2) Whether the mandatory provisions of the West Virginia recidivist statutes that the accused be "duly cautioned" before the escalator sentence provided thereunder was imposed, were observed;

(3) Whether or not the petitioner, because of his pauperism, was denied equal protection in the failure of the court to order a transcript of the trial for the purposes of appeal.

These issues will be discussed in turn.

### I.

On July 28, 1958, it was discovered that a store in Fayetteville, West Virginia, had been broken into and a number of articles stolen therefrom. An alert was sent out to law enforcement agencies in the region (including nearby Virginia). At about 9:00 o'clock in the evening of that day, a Virginia State Trooper observed a car on the outskirts of the City of Clifton Forge, Virginia, traveling at a high (though perhaps not unlawful) rate of speed. He flagged the car to a stop and found that it was being driven by the petitioner, with two male companions in the front seat. He asked petitioner for his registration and driver's license. The petitioner was able to furnish the registration certificate but had no driver's license. Petitioner was placed under arrest. The officer noticed a blanket, apparently covering some object, in the back seat. He lifted a corner of the blanket and found a loaded shotgun. He took the petitioner and his two companions to the jail, where they were "booked", the petitioner for driving without a license, and the two companions for "vagrancy". The three were then taken to a Justice of the Peace for arraignment. Before the arraignment had been completed, the Justice took the trooper into another room and held a conversation with him. The officers then returned the three to the Clifton Forge jail. On the way to the jail the trooper asked the petitioner if he would consent to a search of his car, saying that he could get a search warrant if the petitioner did not so consent. In his petition, the petitioner quotes himself as replying "Go ahead, I have nothing to hide." Later on, in the petition, the petitioner interprets this reply as meaning "Go ahead and get a search warrant, I have nothing to hide", and, in his testimony at the hearing, the petitioner used this interpretive version. At any rate, the trooper (apparently without any protest by the petitioner) went to the car, unlocked the trunk and discovered the articles which were missing from the Fayetteville store. He listed these articles and the list was read to the jury at the trial, although the articles, themselves, were not introduced into evidence.

The respondent, represented by an Assistant Attorney General, rests his case as to the legality of the search and seizure solely upon the contention that they were "incident to the arrest". I find it difficult to conclude that the opening and search of a locked trunk were rea-

sonably incident to an arrest for not having a driver's license. On the other hand, I believe that the discovery of the loaded shotgun, under all of the circumstances, was reasonably incident to the arrest, and that the subsequent search of the trunk was consented to. The words "Go ahead" and "I have nothing to hide" are simply not consonant with the petitioner's contention that he was insisting upon a search warrant.

## II.

■ The petitioner testified that when, on March 17, 1959, he and his co-defendant were brought before the court for sentencing, the Judge referred to a paper which had been given him by the Prosecuting Attorney, and which recited a former conviction of the petitioner in New Jersey, and asked the petitioner whether he was the same person who had been so convicted. Upon the petitioner's affirmative answer, the sentence of 1 to 15 years was imposed. The petitioner testified that he was not advised of the purpose of the interrogation nor was he in any way cautioned about the effect of his affirmative answer. The court order with reference to the sentencing proceedings does not assert that the petitioner was "duly cautioned". No evidence was offered by the respondent in this case to refute the petitioner's testimony. In this state of the record, it is clear that this court would be obliged to find that the trial court had proceeded improperly and that it had no jurisdiction to impose the added 5 years to his sentence. See e. g., Spry v. Boles, 299 F.2d 332 (4 Cir. 1962). However, it is West Virginia law that, where an excessive sentence has been imposed, it will be considered a proper sentence for the maximum period which the court had authority to impose. See e. g., State ex rel. Medley v. Skeen, 138 W.Va. 409, 76 S.E.2d 146 (1953). It is, therefore, clear that a valid 1 to 10 year sentence was imposed, and that, even with maximum "good time" allowance, the petitioner has not fully served that sentence. The petitioner's attack upon what may be an invalid portion of his sentence is premature. It follows that the peti-

tioner is not now entitled to his liberty upon this ground and this court has no jurisdiction to entertain his petition for habeas corpus and for release thereupon. See, e. g., McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934); Ingenito v. New Jersey, 238 F.2d 935 (3 Cir. 1956), (cert. denied 352 U.S. 1014, 77 S.Ct. 576, 1 L.Ed.2d 560).

## III.

■ The petitioner testified that, within three weeks after his commitment, he prepared and mailed to the Circuit Court of Fayette County a petition asking that he be furnished with a transcript of the evidence at his trial, in order to take an appeal. He heard nothing from the court in response to this petition. Several weeks later, after having conferred with a fellow convict, one Elbert Copley, he prepared another petition and a pauper's affidavit, executed both, and sent them to the court. Both the petitioner and Copley testified that this petition was prepared in accordance with the provisions of Chapter 51, Article 7, Section 7, of the West Virginia Code (Michie's Code Section 5251(1)). At the same time he wrote a letter to his court-appointed counsel, John E. Lee, asking Lee to pursue the matter and secure his transcript. The letter to Lee was sent in care of the Circuit Court of Fayette County, since the petitioner did not have Lee's address. Having heard nothing from either the court or Lee, the petitioner wrote C. R. Hill, Jr., of Fayetteville, an attorney who had first been appointed to represent the petitioner and a co-defendant, but who withdrew because of a conflict of interests between the two co-defendants. The petitioner heard nothing from Hill. Despairing of his efforts to obtain a transcript and perfect an appeal, the petitioner, on June 25, 1959, filed with the Circuit Court of Fayette County, a petition for a writ of habeas corpus. The petitioner received no acknowledgment of the filing of this petition and has not been notified of any action taken thereon.

The respondent seeks to meet this testimony by the testimony of one, C. H.

Maxwell, Deputy Clerk of the Circuit Court of Fayette County, West Virginia, who testified that he had searched the records in his charge and could find no request for a transcript of the trial and no notice of appeal. He acknowledged, however, receipt of the petition for a writ of habeas corpus, and that, so far as his records show, no action has been taken thereon.

John E. Lee testified as a witness for the respondent. He acknowledged the receipt of a letter from the petitioner, requesting his aid in securing a transcript of the trial. He was unable to state whether this request was for the purpose of taking an appeal or for preparing a petition for a writ of habeas corpus. He took the letter to the Judge of the Circuit Court of Fayette County and was told by that Judge that his, Lee's, duties as the petitioner's court-appointed counsel had been fully performed, and that he need take no further steps. Lee made no reply to the petitioner's letter, and did not retain that letter.

C. R. Hill, Jr. did not testify at the hearing, but a letter from him to the petitioner, dated shortly prior to the hearing, was produced, in which Hill acknowledged the receipt of communications from the petitioner, requesting aid in securing a transcript of the trial.

On the record, as a whole, this court finds that the trial court ignored timely requests by the petitioner for a transcript of his trial in order to effectuate an appeal from his conviction.

■ The issue becomes, then, whether these agents of the State of West Virginia can deny or ignore a convicted person's request for a transcript in this matter. Beginning with Griffin v. People of the State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), a well-established line of Supreme Court cases has held that a State may not, under the equal protection and due process clauses of the Fourteenth Amendment, give some convicts effective access to its appellate courts while denying others (usually paupers) such effective access. See Eskridge v. Washington State Board of Pris-

on Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). See also United States v. Lane, D.C., 196 F.Supp. 484, affirmed 302 F.2d 537 (7 Cir. 1962).

Taking its cue from the Griffin case, the West Virginia Supreme Court of Appeals has held that the free transcript statute under consideration must, in order to be constitutional, apply alike to convicted paupers whether they are or are not represented by court-appointed counsel. Linger v. Jennings, 143 W.Va. 57, 99 S.E.2d 740 (1957). Anticipating the Supreme Court's decision in Burns v. Ohio, supra, the West Virginia Court in Linger held irrelevant the fact that criminal appeals in West Virginia are not granted as a matter of right. The *opportunity* to appeal was held to be of crucial significance and entitled to the protection of the Fourteenth Amendment.

■ A transcript of trial proceedings is not an absolute requisite to appeal in West Virginia; but it is nowhere suggested in the Linger opinion or in the case before the court that, as a practical matter, a convicted layman can effectively prosecute an appeal without one.

While it may well be that an appeal in petitioner's case would have been unavailing, the wording of the statute under consideration and the reasoning of the Linger opinion appear to leave the trial court no discretion to deny a transcript to one who desires to appeal his conviction. In any event, petitioner has suggested grounds for an appeal, and respondent has not adequately refuted them.

Accordingly, this court must find: That the petitioner, desiring to appeal, complied with the statutory requirements for obtaining a transcript; that the Circuit Court of Fayette County, for reasons unknown, failed to furnish petitioner with said transcript; and that petitioner has thus been denied due process and the equal protection of the laws, contrary to the Fourteenth Amendment.

An order of release may be entered. However, execution of the order may be suspended for a period of ten days from the entry thereof, within which time respondent may file a notice of appeal and request further stay. The order of release, of course, is without prejudice to the right of the State, if it has any such right, to take the petitioner into custody and to take proper steps to hold him in custody for a trial in which his constitutional rights are observed.