Clayman Clifford **SHULTZ**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 8251.

United States Court of Appeals
Tenth Circuit.

Oct. 11, 1965.

Charles F. Brega, Denver, Colo., for appellant.

Donald P. McDonald, Asst. U. S. Atty. (Lawrence M. Henry, U. S. Atty., and Richart T. Spriggs, Asst. U. S. Atty., were with him on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

LEWIS, Circuit Judge.

The appellant was convicted after trial to a jury upon the second count of an information charging the unlawful possession of money known to have been stolen from a bank insured by the Federal Deposit Insurance Corporation, a violation of 18 U.S.C. § 2113(c). He appeals, alleging that his conviction was premised upon testimony and evidence received during the trial that flowed from an unlawful interrogation and search and seizure conducted by agents of the Federal Bureau of Investigation. Although the record does not reveal a pretrial motion to suppress, Rule 41(e), the trial court entertained appellant's objections and conducted an independent hearing probing the admissibility of the questioned evidence during the course of the trial. The court found, from sharply conflicting testimony, that appellant, after being fully advised of his constitutional rights,

freely submitted to the interrogation and voluntarily consented to the subject searches. We review such findings from the version of the testimony found to be creditable by the trial court or undisputed by the appellant.

On November 29, 1964, the Hereford State Bank at Hereford, Colorado was broken into, the vault was skillfully drilled, and several thousand dollars in coin were stolen. Five days later, appellant purchased a Buick automobile from a dealer at Denver for $2,975.00 and paid for the car entirely in silver coin. The car purchase received newspaper publicity because of general interest in its oddity and was noted with particular interest by the Colorado parole authorities—appellant was then on a parole which was violated by the purchase of a car without specific permission. Appellant was immediately arrested and incarcerated for parole violation. And of course the coincidence of the disappearance and appearance of a large quantity of coins led the Federal Bureau of Investigation to the subject interview with appellant and ultimately to the searches now in question.

Appellant was interrogated by FBI agents on December 5 and again on December 7. The agents identified themselves as such, stated they were investigating the Hereford bank burglary and were interested in where appellant had obtained the coins used in purchasing the car. Appellant was informed that he need not talk to them; that he had a right to talk to an attorney or any other person he might choose; that the court would appoint him counsel; that anything he might say could be used against him. Appellant stated he had no objection to talking to the agents and was anxious to clear the matter up. He opened a sealed envelope containing his personal property taken from him by state officers at the time of booking and revealed, among other things, a bank receipt showing the conversion of several hundred dollars in coin to currency. He also signed a written consent to the search of his automobile and home, which searches also resulted in the obtaining of evidence ultimately used against him. And he stated that he and his brother had stumbled upon the coins in a carton near the back entrance to a tavern and had not turned it in to the police because it "would disappear."

At the second interview, on December 7, appellant was again advised of his rights as before, again stated he had no objection to talking to the agents and observed that he had not told the whole truth about where he had obtained the coins. He then stated that he had found the money near the South Platte River and that his brother knew nothing about it. Upon being shown a roll of dimes marked "Hereford State Bank" that had been found in the glove compartment of his car he stated that "he didn't feel he should discuss anything further with us as he felt he should at this time consult an attorney in view of the fact he would probably be charged with a crime * * *." The interview was immediately concluded.

At the time of the subject interviews there can be no doubt but that the proceedings were accusatory in nature and that appellant had a right to counsel although not then formally charged. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. And it is equally clear that evidence of an intentional waiver of the assistance of counsel and the free consent given for an exploratory search of appellant's car and home must be sufficient to overcome the presumption against waiver of a constitutional right. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Villano v. United States, 10 Cir., 310 F.2d 680. But the fact of accusation does not constitutionally close an accused's mouth, Jackson v. United States, 119 U.S.App.D.C. 100, 337 F.2d 136, cert. denied, 380 U.S. 935, 85 S.Ct. 944, 13 L.Ed.2d 822; Long v. United States, 119 U.S.App.D.C. 209, 338 F.2d 549; Davis v. State of North Carolina, 4 Cir., 339 F.2d 770; Otney v. United States, 10 Cir., 340 F.2d 696; and a statement or act may be voluntary al-

though not volunteered. Watts v. State of Indiana, 338 U.S. 49, 53–54, 69 S.Ct. 1347, 93 L.Ed. 1801. The right of law enforcement authorities to investigate crime by inquiry from suspects must not be totally unbalanced by the right of the accused to refuse incrimination. The proper balance lies in voluntariness and the test lies in the totality of circumstance. Weed v. United States, 10 Cir., 340 F.2d 827; Hubbard v. Tinsley, 10 Cir., 350 F.2d 397, decided August 16, 1965.

In applying such test to the facts found by the trial court to be creditable, we can accord no comfort to appellant from Escobedo, supra; Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, or other authorities cited by him. Appellant was not affirmatively denied the right to counsel, was not tricked, threatened or coerced. He was fully informed of his rights, was questioned reasonably and was a mature man with considerable experience in law enforcement matters. The record amply supports the trial court's findings that appellant freely and voluntarily participated in the interviews and granted the consents to search.

Affirmed.