UNITED STATES of America,
Plaintiff-Appellee,

v.

Herbert Benjamin BOUKATER,
Defendant-Appellant.

No. 26401.

Summary Calender.

United States Court of Appeals
Fifth Circuit.

Feb. 19, 1969.

Rehearing and Rehearing En Banc
Denied March 27, 1969.

Alan R. Schwartz, Miami, Fla., for defendant-appellant.

William A. Meadows, Jr., U. S. Atty., Michael J. Osman, by William A. Daniel, Jr., Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Herbert Boukater was convicted by a jury of possession of counterfeit money in violation of 18 U.S.C. § 472. The single point urged on appeal is that the trial judge should have granted a motion to suppress the incriminating evidence on the ground that the federal officials made an illegal search. Having studied the briefs and record, we have determined that this case is appropriate for summary disposition without oral argument. Pursuant to new Rule 18 of the Rules of the United States Court of Appeals for the Fifth Circuit, the Clerk of this Court has been directed

to put this case on the summary calendar and notify the parties in writing.[1]

■ We note at the outset that inasmuch as the federal officers, two Secret Service agents, did not make an arrest prior to the search and did not have a search warrant, the question is whether appellant voluntarily consented to the search. In determining whether a voluntary consent was given, we must, as appellant concedes, view the evidence in the light most favorable to the Government. Thus, according to the testimony of Agents Szpak and Rivers, they approached appellant at the Miami International Airport on the morning of March 26, 1968 and asked him to accompany them to a room nearby. There the agents identified themselves and told Boukater he was suspected of carrying counterfeit bills. At this point he was given a written statement of his constitutional rights and an oral explanation of that statement. Moreover, he was told that he was not under arrest and could leave if he so desired. Appellant replied that he wanted to find out what was going on. The agents repeated that he was suspected of carrying counterfeit bills and asked if he would voluntarily consent to a search of his briefcase. Having given this request some thought, he said, "It looks like you got me. You can search my bags." When asked if he would sign a written waiver to this effect, he said he would not. When asked if his refusal to sign a written waiver meant that he was withdrawing the consent to search, he said, according

to Agent Rivers, "No, go ahead." According to Agent Szpak, he said, "Well, go ahead. You got me. It's in there."

■ In only two respects is the evidence slightly questionable as to the voluntariness of consent: First, Boukater refused to sign a written waiver; second, after he refused to sign, Agent Rivers said something to him about getting a search warrant. While the refusal to sign a waiver might cast doubt on the first oral consent, Boukater reiterated his consent after his refusal to put anything in writing, thereby clarifying his position as to the search. The statement by Rivers about procuring a search warrant is more troublesome and might lead us to a different result if the evidence indicated that Boukater was in custody and that the agent either said or implied that he might as well consent because a warrant could be quickly obtained if he refused. However, Rivers was very emphatic in testifying that he did not pressure appellant by saying that he would get a warrant and make a search even if appellant withheld consent; he merely said he would *attempt* to get a search warrant. Since appellant had been advised that he was not under arrest and was free to leave, he would not have been coerced into consenting to an immediate search by the agent's statement that he would attempt to get a warrant. As we say, this factor is troublesome, but we have concluded that it does not taint the search since everything else points toward completely voluntary consent.[2]

---

1. In order to establish a docket control procedure the Fifth Circuit adopted new Rules 17–20 on December 6, 1968. For a general discussion of the need for and propriety of summary review of certain appeals, see Groendyke Transport, Inc. v. Davis, 5th Cir. 1969, 406 F.2d 1158. For cases heretofore placed on summary calendar, see Wittner v. United States of America, 5th Cir. 1969, 406 F.2d 1165; United States of America v. One Olivetti Electric 10-Key Adding Machine, etc., 5th Cir. 1969, 406 F.2d 1167; United States of America v. One 6.5 mm. Mannlicher-Carcano Military Rifle, etc. and John J. King, 5th Cir. 1969, 406 F.2d

1170; National Labor Relations Board v. The Great Atlantic & Pacific Tea Company, Inc., 5th Cir. 1969, 406 F.2d 1173, and Melvin Thompson v. Wingate White, Warden, 5th Cir. 1969, 406 F.2d 1176.

2. It has been held that a consent to search may be found to have been voluntary even though the officer suggested to the suspect that a warrant could be obtained in due course in the absence of consent. United States ex rel. Gockley v. Myers, 3d Cir. 1967, 378 F.2d 398; Hamilton v. North Carolina, E.D.N.C.1966, 260 F.Supp. 632; Kershner v. Boles, N.D. W.Va.1963, 212 F.Supp. 9.

■ We are mindful that a voluntary consent to search cannot be lightly inferred but must be proved by clear and positive evidence. United States v. Como, 2d Cir. 1965, 340 F.2d 891. Nevertheless, we find the evidence here sufficient to sustain the search. From a negative standpoint, the record discloses no concealment of identity on the part of the agents, no discourtesy, no abuse or threat, and no ruse or force. See Maxwell v. Stephens, 8th Cir. 1965, 348 F.2d 325, 336. On the contrary, the agents immediately identified themselves, told appellant what he was suspected of, gave him a full *Miranda* warning, and told him he was free to leave. When they asked him if he would consent to a search of his briefcase, he confessed guilt and gave his consent. After having refused to sign a waiver, he made it clear that he was not withdrawing his consent to search and, according to Szpak, even reasserted his guilt. With all this evidence clearly pointing toward uncoerced, voluntary consent, we sustain the search in spite of the factors which we have previously characterized as being slightly questionable. Rivers' suggestion that he might try to get a warrant came after Boukater's initial consent, which was clear and unambiguous. Up to the time of the first consent there was not a trace of coercion; not enough happened thereafter to create what we would call a coercive atmosphere.

Appellant relies largely on cases decided by the United States Court of Appeals for the District of Columbia and Ninth Circuits. *See* Channel v. United States, 9th Cir. 1960, 285 F.2d 217; Higgins v. United States, 1954, 93 U.S.App.D.C. 340, 209 F.2d 819; Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649. Though we indicated in Pekar v. United States, 5th Cir. 1963, 315 F.2d 319, 324 that those courts have expressed a view more extreme than the one of this Circuit, we do not look upon our holding in the case at bar as being inconsistent with the District of Columbia and Ninth Circuit cases. The thrust of those cases is that voluntary consent can rarely, if ever, be inferred where the suspect denies his guilt because a man who denies his guilt would not actually be willing for the police to search for contraband he knows will be discovered. But in *Higgins* the court recognized that there can be true consent to search where the consent is preceded by a valid confession. 209 F.2d at 820. *See also* Shultz v. United States, 10th Cir. 1965, 351 F.2d 287. This is the instant case. Boukater acknowledged his guilt and consented to the search without being subjected to any physical coercion and after a full *Miranda* warning.

Appellant also relies on Pekar v. United States, *supra,* in which this Court invalidated a search on the ground that the defendant's consent had been given under coercion. We find the case distinguishable on its facts. The Court said that the defendant had not wanted the officers to enter his room and allowed them to do so only in submission to their persistence. He did not answer the door for ten minutes and, after answering, would not let the officers inside until he had seen full identification through a louvered door. Having let them in, he refused to sign a written consent to search but said they could look around. The Court emphasized an officer's testimony that the defendant seemed confused and found that the officers' superior position led the confused defendant to submit to the search. Finally, the Court pointed out that when trying to gain admittance the officers did not explain that their specific purpose was to search for evidence of a crime committed by the defendant but merely said they wanted to talk to him about an investigation. There was an element of deception or, at least, a lack of complete candor. Considering all the facts of the *Pekar* case, we do not believe that it dictates reversal here. We hold that Boukater's consent was voluntary, that the search was valid, and that the judgment of the district court must accordingly be affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.