**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lloyd Nelson JONES, Defendant-Appellant.**

**No. 72–2261.**

United States Court of Appeals,
Fifth Circuit.

March 20, 1973.

Rehearing Denied April 12, 1973.

Robert Glass, New Orleans, La., (court appointed) for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Harry R. Hull, Jr., Mary Williams Cazalas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before MORGAN, CLARK and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Lloyd Nelson Jones appeals from his conviction by a jury of robbing a federally insured bank. 18 U.S.C. § 2113. We affirm.

On January 9, 1970, the National American Bank in New Orleans was robbed by three men. After two of the alleged robbers had been arrested and were in custody, FBI agents investigating the case concluded that Lloyd Nelson Jones was the third member of the robbery team. A warrant for his arrest was accordingly obtained by the FBI office in New Orleans. Jones was subsequently traced to Cleveland, Ohio. The agents in New Orleans then notified the FBI office in Cleveland that Jones was probably at his wife's residence in Cleveland.

Agent Thomas H. Kirk appeared before a United States Magistrate in Cleveland on January 19, 1970, and on the basis of his affidavit was issued a warrant authorizing the search of the residence in which Jones was supposedly located. The following morning at 8 A. M. approximately ten FBI agents went to 11506 Whitmore Street in Cleveland to search the residence and to arrest Jones if he were there. Mrs. Jones an-

swered the agents' knock at the door and was told that they had a search warrant authorizing a search of her home and were going to arrest Jones. She replied that her husband was not there. The agents entered the apartment, and while Agent Kirk talked with Mrs. Jones the other agents looked for the defendant and found him asleep in a back bedroom. The agents recovered a pistol from beneath his pillow, told him he was under arrest for the New Orleans bank robbery, gave him *Miranda* warnings, and placed him in handcuffs. By the time Agent Kirk reached the bedroom, Jones had already been given his warnings, was under arrest and in handcuffs. Agent Don Gordon then asked Jones where the money was, and Jones answered that it was in the suitcase, indicating a suitcase located about a foot and one-half away from the head of the bed.

When the agents opened the suitcase, they found $1,190 in a cigarette carton. The serial numbers of three $20 bills matched those of the stolen money. A used airline ticket bearing the name of I. Levy and showing that it was purchased in Houston for a flight to Cleveland was also found in the suitcase. At the trial the money recovered from the suitcase, including the marked $20 bills and the airline ticket, were admitted into evidence over defendant's objections. Jones's signed confession, as well as diagrams of the robbery and several oral statements not reduced to writing, were also admitted.

As usual, the issues on appeal turn on the legality of the search and seizure of the physical evidence and on the admissibility of defendant's statements, which allegedly flowed from the illegal search. Jones contends: (1) that the search warrant was invalid; (2) that the search of the suitcase was not incident to his arrest; (3) that he did not consent to the search; and (4) that his statements were fruits of the illegal search and thus inadmissible.

## I.

We turn first to the validity of the search warrant, because if it is good then we do not need to consider defendant's other allegations of error.

The warrant was issued on the basis of an affidavit prepared by Thomas H. Kirk, an FBI agent in Cleveland. The entirety of Kirk's affidavit is as follows:

BEFORE CLIFFORD E. BRUCE, 223 U.S. Court House, Cleveland, O. The undersigned being duly sworn deposes and says:

That he has reason to believe that on the premises known as 11506 Whitmore, Cleveland, Ohio, a second and third floor apartment in a white 3 story frame 2 family dwelling located on the south side of the street in the northern District of Ohio there is now being concealed certain property, namely U.S. currency, weapons, or other fruits and instrumentalities which are in violation of T. 18, Sec. 2113(a)(d).

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: that on 1/9/70 Lloyd Nelson Jones accompanied by Calvin E. Williams and Pleasant Jones, Jr., robbed the National American Bank, Parkchester Branch, 4764 Paris Avenue, New Orleans, Louisiana. All subjects were subsequently identified by bank employees and Calvin E. Williams & Pleasant Jones Jr. were arrested and some bank loot money was recovered. Investigation by FBI, New Orleans, Louisiana, indicates Lloyd Nelson Jones fled to Louisiana to visit his wife, Alice Jones McDade and 3 children who reside at 11506 Whitmore, Cleveland, Ohio.

Thomas H. Kirk
*Signature of Affiant,*
S/A FBI
*Official Title, if any.*

On its face this affidavit appears to support the issuance of the warrant. The problem is that testimony developed

at the suppression hearing conclusively established that Lloyd Nelson Jones was not identified by bank employees as the affidavit states.[1] On the contrary, no one at the bank was able to identify defendant Jones as one of the robbers immediately after the robbery.

The government's brief is devoted almost exclusively to arguments in support of the warrant. It is unnecessary for us to comment on them because of this court's holding in United States v. Upshaw, 448 F.2d 1218 (5th Cir., 1971). Faced with the question of the validity of a search warrant procured under circumstances almost identical to those present in the instant case, the court held the warrant invalid. Judge Godbold's opinion in *Upshaw* more than adequately disposed of the validity issue, and it is therefore appropriate to quote at length from his opinion.

> "Purged of its erroneous statements, the affidavit was wholly lacking in facts tending to show that Davis was printing checks or identification documents or that any of the documents were on the premises of the print shop. Stripped of its incorrect assertions, the affidavit became like that in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), consisting of nothing more than the bare statement of affiant's belief and cause to suspect that items were in a specified location. Mere affirmance of belief or suspicion is not enough. *Id.* at 47, 54 S.Ct. at 13, 78

L.Ed. at 162. *See also* Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

> "It is not necessary in this case for us to reach the question of whether a defendant is entitled to a hearing to test the underlying factual validity of the affidavit on the basis of which a warrant has been issued (as opposed to the affidavit's sufficiency if taken as true). And, it is equally unnecessary to decide what preliminary requirements, if any, a defendant must meet after he requests a hearing in order to demonstrate that there is an authentic issue of fact which will justify such a hearing. These questions have been neither considered by the District Court nor briefed to us on appeal. In this instance the court held a hearing, appropriately convened, on the issue of probable cause. We are called upon to review the consequences of that hearing, after the facts have come out. The evidence, fully explored at the hearing, revealed that what was said in the affidavit was in vital respects erroneous, and that the facts, when truly and correctly stated, would not support the issuance of a warrant.

> \* \* \* the warrant must contain allegations that go beyond the affiant's mere suspicion or his repetition of another's mere suspicion. The warrant is a check upon the officer's zeal in 'the often competitive enterprise of ferreting out crime,' and hence it must be tested against

---

1. The pertinent portion of Agent Kirk's testimony from the suppression hearing is as follows:

"Q And, when you set forth this information that all the subjects were subsequently identified by the bank employees, who gave you that information?

"A At the time I thought I had obtained it from Mr. Hensel. We had talked on the telephone following receipt of a teletype from his office and it was him giving me some background information as to the case.

"Q Did Mr. Hensel tell you that they were identified by the bank employees?

"A No, he did not.

"Q Well, did you receive that information from any other source other than Mr. Hensel?

"A Well, Mr. Hensel was discussing the background with me and he mentioned that he had been identified by one of the other subjects in the case when he was arrested. I said how about the bank employees, and he said no, they had masks on.

"Q So, when you submitted this information as contained in this affidavit that certain individuals were identified by the bank employees, that was incorrect?

"A That's correct, I didn't realize it at the time it was being incorporated."

objective facts presented to a detached magistrate.

Gonzales v. Beto, 425 F.2d 963 (5th Cir. 1970).

"Once it came to the attention of the court, from the testimony at the motion to suppress hearing, that evidence had been seized on the basis of statements of facts erroneously made by the affiant which struck at the heart of the affidavit's showing of probable cause, the court was required to grant the motion. The judicial system cannot be a party to the use of tainted evidence on the basis that, arguably, the defendant was not entitled to bring to the attention of the court what the court has come to know anyhow."

■ As in *Upshaw*, when the affidavit in question here is purged of its erroneous statement, it consists of nothing more than Agent Kirk's bare statements of belief and cause to suspect that the fruits of the bank robbery were in the residence at 11506 Whitmore Street. "Mere affirmance of belief or suspicion is not enough." Nathanson v. United States, supra, 290 U.S. at 47, 54 S.Ct. at 13. We hold that the search warrant issued to Agent Kirk was invalid. Therefore, it cannot be used to justify the search and seizure of the evidence introduced at defendant's trial.

Having concluded that the search and seizure here cannot be sustained on the basis of a search warrant, we must determine if there is another theory upon which to uphold the search.

## II.

Because the search here must now be characterized as warrantless, the government must establish that it is within one of the exceptions to the warrant requirement. Defendant concedes that his arrest was lawful. The issue then is whether the search of the suitcase located a foot and one-half away from the head of his bed was incident thereto. Both the government and the defendant recognize that Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) is dispositive of this issue.

In *Chimel* the Supreme Court clarified the standard applicable in the "search incident to arrest" situation.

"* * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

Under these principles the question whether the search here was incident to defendant's arrest is narrowly drawn. Was the suitcase within the area of Jones's immediate control such that he reasonably could have been expected to have gained possession of a weapon or destructible evidence from inside the suitcase?

The answer to this question is obviously dependent on the factual setting at the time of the search. Jones was in handcuffs when the agents opened the suitcase. The record is unclear whether his hands were cuffed in front or behind his back and does not reveal the defendant's location in relation to the suitcase at the time of the search. Both of these

facts are relevant to a determination of access to weapons or destructible evidence which is the crucial factor in the *Chimel* analysis.

For example, if defendant's hands were cuffed in front and he were in close proximity to the suitcase, then the search here could probably be justified under *Chimel*. Even with the presence of numerous FBI agents in the room, we cannot say that it would be unreasonable to believe that Jones might attempt to lay his hands on a weapon located inside the suitcase. But if defendant's hands were cuffed behind him in such a manner that he was denied access to the suitcase, then the search could not be upheld under *Chimel* because the suitcase would not be within his immediate control or within an area from which he might gain possession of a weapon or destructible evidence.[2]

■ It might seem anomalous for the validity of a search to depend on the position of a defendant's hands. Nonetheless, the *Chimel* analysis requires just this sort of an examination of the facts. In essence, the approach to a claim that a search was incident to an arrest is for the court to examine the facts and make an objective determination of a rather subjective question: could the law enforcement officials on the scene reasonably expect the arrested person to gain hold of a weapon or evidence in the area searched? For, as the *Chimel* Court stated:

"There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized excep-

tions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less."

If the legality of the search here rested on a resolution if the search incident question, we would, therefore, have to remand for additional evidence. The district court concluded, however, that Jones consented to the search of his suitcase. We agree and uphold the search here on that basis alone.

## III.

■ "The line between an accused's voluntary consent and his involuntary submission to police authority is often difficult to draw." United States v. Como, 340 F.2d 891 (2nd Cir., 1965). And, "when a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 548–550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). Consent to search cannot be lightly inferred; the government must establish by clear and convincing evidence that the consent was voluntarily given and was not coerced, either physically or psychologically. Phelper v. Decker, 401 F.2d 232 (5th Cir., 1968).

■ The trial court found that Jones's statement concerning the location of the money was voluntarily given. Implicit in this finding is the conclusion that Jones consented to the search. Once the trial court determines that the prosecutor has met his burden of showing that a defendant's consent was freely and voluntarily given, we cannot overturn that finding unless it is clearly erroneous.[3] United States v. Resnick,

---

2. A situation could develop, of course, in which a defendant with his hands cuffed behind him would nevertheless have access to weapons or evidence.

3. It would have been better practice for the court to enter findings of fact and conclusions of law after the suppression

hearing. United States v. Montos, 421 F.2d 215 (5th Cir., 1970). If such findings had been made, we would be required to accept them unless they were clearly erroneous. *See* 3 C. Wright, Federal Practice and Procedure, § 675 at 130 (1969). Rule 41(e) of the Federal Rules of Criminal Procedure contemplates

455 F.2d 1127, 1133 (5th Cir., 1972). This is because "whether consent to search has been given is a question of fact." Hoover v. Beto, 467 F.2d 516 (5th Cir., 1972) [en banc]; United States v. Mather, 465 F.2d 1035 (5th Cir., 1972); Landsdown v. United States, 348 F.2d 405 (5th Cir., 1965). We are not persuaded that the trial court's finding of voluntary consent was clearly erroneous.

Jones relies on Bumper v. North Carolina, *supra,* as primary support for his position that he did not voluntarily consent to the search. In *Bumper* the police gained entrance to the premises by announcing that they had a search warrant. To the state's argument that defendant's grandmother consented to the search, the Supreme Court replied:

"When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent."

Defendant contends his statement that the money was in the suitcase "was a product of resigned inevitability," [4] because he knew that "he had no right to resist the search." *Bumper, supra.*

■■ Defendant's reliance on *Bumper* is misplaced. First, even though the FBI agents here told Mrs. Jones they had a warrant to search the residence, they also told her that they were going to arrest Jones if he were present there. It is not disputed that at the time the agents went to the residence in Cleveland there was a valid outstanding arrest warrant for Jones. The agents' entry into the premises was therefore justified for the purpose of arresting Jones. Conversely, in *Bumper* the police officer's entry into the grandmother's home was an unjustified intrusion, gained only by reliance on an invalid or non-existent search warrant. Secondly, the agents did not tell Jones that they had a search warrant. For this reason Jones cannot claim that his consent was "no more than acquiescence to a claim of lawful authority." *Bumper, supra,* 391 U.S. at 549, 88 S.Ct. at 1792. There had been no claim of lawful authority under the search warrant. Hence, *Bumper* does not furnish a basis for holding that Jones's consent to the search of the suitcase was involuntary.

Jones also asserts that the circumstances under which he made the statement preclude the conclusion that he voluntarily consented to the search. He points out that at the time he made the consensual statement there were at least five to seven FBI agents present in his room, that he was under arrest and in handcuffs, and that he was awakened by the agents and thus not fully aware of what was happening. We agree that under these circumstances consent to search should not be easily assumed. We cannot agree, however, that the existence of these facts precludes as a matter of law the conclusion that Jones consented to the search.

■ It is significant that we are not faced with an illegal entry by the agents, nor with consent given after an

a pretrial hearing on suppression questions in order to avoid the delay resulting from such questions being raised at the trial. The trial court allowed a partial rehash of the pretrial suppression hearing to be conducted at the trial. While this is clearly within the court's discretion, findings of fact and conclusions of law entered prior to trial would have precluded this waste of time unless the *defendant developed additional evidence* between pretrial and trial; this was not the case here as a comparison of the trial record, made out of the presence of the jury, closely parallels that made at the suppression hearing and discloses no new facts. At any rate, the court ruled at the trial that Jones's statement was freely and voluntarily given. We believe that this finding is entitled to be reviewed under the clearly erroneous standard, but even if it were not an independent review of the record discloses clear and convincing evidence of voluntary consent.

4. Appellant's brief at 12.

illegal arrest. *See* Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L. Ed.2d 441 (1963). In short, the government does not have the even heavier burden of proving that the consent to search was voluntary, notwithstanding the taint of an illegal arrest. *See, e. g.,* Phelper v. Decker, *supra*; Bretti v. Wainwright, 439 F.2d 1042 (5th Cir., 1971). *See generally,* Coolidge v. New Hampshire, 403 U.S. 443, 473–490, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971).

The fact that Jones was under arrest is indeed a factor militating against a finding of consent because after arrest a subject is more susceptible to possible duress or coercion. United States v. Richardson, 388 F.2d 842 (6th Cir., 1968). We have previously recognized, however, that even though consent obtained after arrest may be suspect, the fact of arrest does not necessarily vitiate what otherwise appears to be a valid consent. The question of consent remains one of fact for the trial court in the first instance. United States v. Elrod, 441 F.2d 353 (5th Cir., 1971). *See also* United States v. Mitchell, 322 U.S. 65, 69–70, 64 S.Ct. 896, 88 L.Ed. 1140 (1944). In any arrest there is present a degree of duress. The question is whether the officers used coercive tactics or took unlawful advantage of the arrest situation to obtain the consent. In other words, was there a use of coercive tactics by the arresting officers such that the duress present in a particular case exceeds the normal duress inherent in any arrest? Bretti v. Wainwright, *supra*. There is no claim of coercion by the FBI agents, and the record here contains no evidence of such coercion.

 Moreover, the absence of intimidation, threats, abuse (physical or psychological), or other coercion is a circumstance weighing in favor of upholding what appears to be a voluntary consent. *E. g.* Cockerham v. Wainwright,

444 F.2d 438 (5th Cir., 1971); Bretti v. Wainwright, *supra*; United States v. Thompson, 421 F.2d 373 (5th Cir., 1970); United States v. Boukater, 409 F.2d 537 (5th Cir., 1969); United States ex rel Harris v. Hendricks, 423 F.2d 1096 (3rd Cir., 1970). Additionally, we are not convinced that defendant's will was overborne by the number of FBI agents present when the arrest was made and the statement given. United States v. Thompson, *supra*. *See* United States v. Savage, 459 F.2d 60 (5th Cir., 1970); United States v. Alexander, 431 F.2d 83 (5th Cir., 1970). Thus, a defendant under arrest or in custody may voluntarily consent to a search, and a finding of its voluntariness by the trial court will not be disturbed on appeal as clearly erroneous unless it appears that the defendant's consent was physically or mentally coerced by actions of the arresting officers which went beyond the normal duress inherent in any arrest.

Another factor which weighs in favor of sustaining the trial court's conclusion as to voluntariness is that Jones was given his *Miranda* warnings prior to the time his statement was made. Although the giving of *Miranda* warnings will not insulate the government from claims that consent was coercively obtained, it is a circumstance properly considered in determining whether consent was freely given. *See* Bradford v. United States, 413 F.2d 467 (5th Cir., 1969); United States v. Boukater, *supra*; United States v. Noa, 443 F.2d 144 (9th Cir., 1971). Jones had been told that he did not have to speak and that anything he said could be used against him. Absent a showing of coercive activity on the part of the agents, we are not persuaded, as he argues, that his answer to the question concerning the location of the money was given because he knew that a search would be conducted no matter what he said.[5]

5. We note that defendant does not claim that his statement was the product of trick or deception practiced by the FBI agents. *Compare* United States v. Bailey, 447 F.2d 735 (5th Cir., 1971), *with* Alexander v. United States, 390 F.2d 101 (5th Cir., 1968), and United States v. Payne, 429 F.2d 169 (9th Cir., 1970).

Finally, after *Miranda* warnings have been given, it is not necessary for a law enforcement officer to affirmatively state that he will not search if permission is refused. United States v. Resnick, *supra,* 455 F.2d at 1133. It follows that the officer does not have to ask permission to conduct a search, although if he does ask and receive permission this is another circumstance bearing on the voluntariness of the consent. *See, e. g.,* Cockerham v. Wainwright, *supra;* Bretti v. Wainwright, *supra;* United States v. White, 431 F.2d 84 (5th Cir., 1970); cert. den. 400 U.S. 998, 91 S.Ct. 476, 27 L.Ed.2d 448. If *Miranda* warnings have been given, specific warnings of Fourth Amendment rights are not necessary to validate a search conducted after an otherwise voluntary consent. United States v. Canseco, 465 F.2d 383 (5th Cir., 1972); White v. United States, 444 F.2d 724 (10th Cir., 1971); United States v. Goosbey, 419 F.2d 818 (6th Cir., 1970); Government of Virgin Islands v. Berne, 412 F.2d 1055 (3rd Cir., 1969); cert. den. 396 U.S. 837, 90 S.Ct. 96, 24 L.Ed.2d 87; Gorman v. United States, 380 F.2d 158 (1st Cir., 1967). *See also,* United States v. Resnick, *supra;* Hoover v. Beto, *supra.*

We hold that the district court was not clearly erroneous in its conclusion that Jones voluntarily made the statement telling the agents where the stolen money was located, thereby consenting to the search of the suitcase. Our conclusion that the trial court's finding was not clearly erroneous is bolstered by recent decisions from other circuits finding consent to search in circumstances almost identical to those present in the case at bar. *See* United States v. Candella, 469 F.2d 173 (2nd Cir., 1972); United States v. Rothberg, 460 F.2d 223 (2nd Cir., 1972); United States v. Wheeler, 148 U.S.App.D.C. 204, 459 F.2d 1228 (D.C.Cir., 1972); United States v. Jiminez-Badilla, 434 F.2d 170 (9th Cir., 1970).

Because we have concluded that Jones consented to the search of the suitcase,

the money and the airline ticket taken from his suitcase, as well as his written confession, oral confession and diagrams of the robbery, cannot be characterized as fruits of illegal police activity. The trial court did not err therefore in failing to suppress this evidence.

We have considered appellant's other allegations of error and find them without merit. The conviction is therefore Affirmed.