Chandra Trembly appeals her convictions for possession of marijuana in violation of R.C. 2925.11 (C) (3), and possession of drug paraphernalia, in violation of R.C. 2925.11 (C)(1). She asserts that the Marietta Municipal Court should have granted her motion to suppress. We disagree because the police did not violate the prohibition of warrantless seizures by asking the driver and passenger of a legally stopped car whether there were any drugs or weapons in the car, and because Trembly voluntarily consented to the search of a metal container containing marijuana and rolling papers. Accordingly, we affirm the judgment of the trial court.
 I.
State Trooper Ira Walker stopped a car in which Trembly was a passenger. Before Walker stopped the car, he decided to issue the driver only a written warning for speeding instead of issuing a citation. Once Walker pulled over the car, he directed the driver, Patrick Moran, to come back to the patrol car. After Walker had written the warning but before he gave it to Moran, he asked Moran if there were any drugs or weapons in the car. According to Walker, Moran replied "I don't think so. There shouldn't be." According to Moran, Walker's question concerned only weapons, not drugs, and he answered "no" to Walker's question.
Walker left Moran in the patrol car and went to retrieve the car's registration from the front-seat passenger, Jason Presutti. Presutti stepped out of the car to retrieve his identification and the car's registration. Walker also asked Presutti if there were any drugs or weapons in the car. According to Walker, Presutti also answered the question in an equivocal manner by stating "There shouldn't be; I don't think so; as far as I know, there's not." Presutti claimed that he told Walker that he didn't have any drugs or weapons in the car.
Walker then told Presutti that he had a drug detection dog in Washington County, and that if he would bring the dog to the scene, the dog would alert if there had been, or were, any drugs or paraphernalia in the car. According to Presutti, Walker then directed him to ask the other passenger, Trembly, if she had any drugs. Presutti claimed that after he asked Trembly, she gave Walker a metal container holding marijuana and rolling papers. According to Trembly, she overheard Walker mention the drug dog and direct him to make sure no one in the car had any drugs, so she gave the container directly to Walker. Walker denied directing Presutti to ask Trembly about drugs. According to Walker, after he told Presutti about the drug dog, Presutti simply reached into the car and pulled out a small metal container, which he handed to Walker.
After Walker opened up the box and found the marijuana and rolling papers, he asked Presutti if the container was his. Presutti stated that it was not. Walker then looked at Trembly, who admitted that the box was hers. Walker searched the entire car, but found no further contraband. Walker still had not issued the warning citation to Moran at this time.
Trerubly was charged with possession of marijuana and possession of drug paraphernalia. She filed a motion to suppress. At the suppression hearing, Walker, Moran, Presutti, and Trembly testified. The trial court explicitly found Walker's testimony credible and believed that Presutti handed Walker the container. The trial court overruled Trembly's motion to suppress. After Trembly pled no contest to the charges, the trial court found her guilty and sentenced her accordingly.
Trembly appeals her convictions, asserting the following assignment of error for our review:
 I. THE TRIAL COURT ERRED BY OVERRULING THE MOTION TO SUPPRESS IN THAT THE OFFICER'S SEIZURE AND CONTINUED DETENTION OF DEFENDANT-APPELLANT VIOLATES THE UNITED STATES CONSTITUTION AND SECTION 14 ARTICLE I OF THE OHIO CONSTITUTION.
 II.
In her only assignment of error, Trembly argues that Walker's extension of a routine traffic stop into a seizure and eventually a search violated the Fourth Amendment to the United States Constitution and Section 14, Article I, of the Ohio Constitution. Although Trembly testified at the suppression hearing that she gave the metal container directly to Walker, she also asserts that she was coerced into handing the metal container filled with marijuana to Presutti.
Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United States v. Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility.State v. Carter (1995), 72 Ohio St.3d 545, 552. A reviewing court should not disturb the trial court's findings on the issue of credibility.State v. Mills (1992), 62 Ohio St.3d 357, 366. A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592,594. An appellate court reviews the trial court's application of the lawde novo. State v. Anderson (1995), 100 Ohio App.3d 688, 691.
The Fourth Amendment to the United States Constitution guarantees "the right of the People to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 14, Article I, of the Ohio Constitution guarantees the "right of all people to be secure in their person, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the government is prohibited from subjecting individuals to unreasonable searches and seizures. Delaware v. Prouse (1979), 440 U.S. 648, 662; State v. Gullett
(1992), 78 Ohio App.3d 138, 143.
 A.
Trembly argues that Walker's extension of a routine traffic stop into a seizure and eventually a search violated the Fourth Amendment to the United States Constitution and Section 14, Article I, of the Ohio Constitution.
The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer possesses a reasonable suspicion, based upon specific and reasonable facts, which, taken together with rational inferences from those facts, warrants the belief that criminal behavior is imminent. Terry v. Ohio (1968), 392 U.S. 1; United States v. Brignoni-Ponce (1978), 422 U.S. 873; State v. Andrews (1991), 57 Ohio St.3d 86;State v. Venham (1994), 96 Ohio App.3d 649, 654. To justify an investigative stop, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped is about to commit a crime. Prouse at 659; Terry.
The propriety of an investigative stop must be reviewed in the light of the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177,178.
A police officer's subjective intentions play no role in ordinary probable cause Fourth Amendment analysis. Whren v. United States (1996),517 U.S. 806, 813. This concept applies equally to investigative stops.State v. Thompson (Mar. 12, 1997), Athens App. No. 96CA1748, unreported.
The scope and duration of the investigative stop must be limited to effectuate the purpose for which the initial stop was made. Venham,96 Ohio App.3d at 655, citing State v. Berry (Dec. 1, 1993), Washington App. No. 93CA17, unreported. If circumstances "attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, * * * then the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues." Venham,96 Ohio App.3d at 655, quoting Berry. While the lawfulness of the initial stop "will not support a `fishing expedition' for evidence of another crime," Venham, 96 Ohio App.3d at 655 (internal quotations omitted), an officer's subjective motivation for the initial stop is irrelevant to the lawfulness of the continued detention. Whren at 813;State v. Robinette (1997), 80 Ohio St.3d 234.
Police have inherent authority to see a motorists license and registration "if the officer's suspicions of criminal activity has not been dispelled." New York v. Class (1985), 475 U.S. 106, 115.
Police officers, under certain circumstances, "may briefly detain an individual without reasonably articulable facts giving rise to suspicion of criminal activity, if the detention promotes a legitimate public concern, e.g., * * * reducing drug trade." State v. Robinette (1997),80 Ohio St.3d at 241. The Robinette court held that because of this public interest, a police officer's brief detention of a motorist after the completion of a traffic stop to ask him, pursuant to a local drug interdiction policy, whether he was carrying any illegal drugs or weapons was not an unreasonable seizure.
In this case, Walker had not issued the written warning to Moran when he asked both Moran and Presutti whether there were any drugs or weapons in the car. Moreover, once Walker received a less than unequivocal denial from Moran, he was justified in asking the same question of Presutti while he was obtaining the car's registration. The officer inRobinette did not violate the Fourth Amendment by detaining an individual after the completion of a traffic stop in order to ask the individual if he was carrying illegal drugs or weapons. Walker's brief questioning of Moran and Presutti was even less of an intrusion because he asked the same question during the traffic stop. See Garfield HeightsMetropolitan Park District v. Skerl (Nov. 4, 1999), Cuyahoga App. Nos 74545 74555, unreported (pursuant to Robinette, questioning motorists about drugs and weapons during a traffic stop does not amount to an intrusion sufficient to activate the protections of theFourth Amendment). Accordingly, we find that Walker did not violate theFourth Amendment to the United States Constitution or Section 14, Article I, of the Ohio Constitution when he asked Moran and Presutti whether there were any drugs or weapons in the car.
 B.
Trembly also argues that she was not acting voluntarily when she gave the metal container to Presutti. We note that the trial court explicitly found Walker's testimony credible. He testified that Presutti reached in the car for the metal container without Trembly's assistance.
A warrantless search based upon a suspect's consent is valid if her consent is voluntarily given, and not the result of duress or coercion, either express or implied. Schneckloth v. Bustamonte (1973), 412 U.S. 218,227; State v. Danby (1983), 11 Ohio App.3d 38. The voluntariness of consent is a question of fact to be determined from the totality of the circumstances. Schneckloth at 227. The burden of proving by clear and convincing evidence that the suspect voluntarily consented to the search rests upon the prosecution. Schneckloth at 223; Danby; Bumper v. NorthCarolina (1968), 391 U.S. 543, 548; State v. Pi Kappa Alpha Fraternity
(1986), 23 Ohio St.3d 141, 144.
The standard of proof to show a waiver of Fourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth orSixth Amendment rights. State v. Barnes (1986), 25 Ohio St.3d 203, 208. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of the consent. Schneckloth at 227; UnitedStates v. Mendenhall (1980), 446 U.S. 544.
In examining the totality of the circumstances, we may consider the factors relating to the environment in which the consent was given, including, but not limited to whether the defendant: (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied on promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or secluded place; or (6) either objected to the search or stood by silently while it occurred. State v. Perry (Sept. 15, 1997), Washington App. No. 96CA10, unreported. Other factors relevant to this inquiry include the time of day, the number of officers present, and the nature of the request.
Under certain circumstances, a statement by the police that if consent to search is not given, they will obtain a warrant to search may serve to vitiate the voluntariness of any subsequent consent. Danby,11 Ohio App.3d at 41-42. See, also United States v. Boukater (C.A.5, 1969),409 F.2d 537; State v. Foster (1993), 87 Ohio App.3d 32.
Trembly does not assert that Presutti handed the metal container to Walker without her permission. Based upon the trial court's finding, we assume that Trembly gave Presutti permission to hand the metal container to Walker, either by handing it to Presutti, or failing to stop Presutti from giving it to Walker. Thus, Trembly gave Walker permission to search the metal container. She contends that this consent was not voluntary.
In this case, Walker did not threaten to obtain a warrant or have the drug dog search the car if Presutti did not consent to a search. Rather, he informed Presutti that he had access to a drug dog that could tell whether there were drugs or had been drugs in the car. In response, Presutti reached in the car and gave Walker the container,
While Walker's statement is somewhat troubling, the remainder of the circumstances surrounding Trembly's consent indicate that Trembly's consent was voluntary. Walker did not place Trembly under arrest and did not question her at all until she consented to the search of the container. Walker did not threaten, physically intimidate, or punish Trembly. She was in a car alongside a public road. Considering the totality of the circumstances surrounding Trembly's consent, we find that she voluntarily consented to the search of the metal container.
 III.
In conclusion, we overrule Trembly's only assignment of error and affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion with Attached Concurring Opinion. Harsha, J.: Dissents with Attached Dissenting Opinion.
 ______________________________________ Roger L. Kline, Presiding Judge