796 A.2d 967

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Alma MACK, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 2001.

Decided May 20, 2002.

Glen H. Ridenour, Philadelphia, for appellant, Alma Mack.

Catherine Lynn Marshall, Hugh J. Burns, Jr., Philadelphia, for appellee, Com. of PA.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### *OPINION ANNOUNCING THE JUDGMENT*
### *OF THE COURT*

Justice NEWMAN.

We granted this appeal to decide the validity of a consent to search when the police inform the suspect that they would obtain a search warrant if the suspect refuses permission to search. We affirm the decisions of the Court of Common

Pleas of Philadelphia County (trial court) and the Superior Court upholding the validity of the consent to search.

On January 26, 1994, at approximately 7:00 p.m., Sergeant Kilrain of the Philadelphia Police Department received a telephone call from a woman who identified herself as Officer Susan Hughes of the Houston (Texas) Police Department. Officer Hughes informed Sergeant Kilrain that the department's narcotic-detector dog, while conducting a sniff search of baggage at the Houston airport, indicated the presence of drugs in a piece of luggage that had been placed on a flight bound for Philadelphia, Pennsylvania. Sergeant Kilrain received a two-page fax from the Houston Police Department that described the luggage, the number and airline of the flight, and the baggage claim number of the suspect item. Specifically, the fax stated that the luggage was a brown bag with a green stripe, and a claim ticket bearing the number 22–11–07. Also, the fax stated that the luggage was on Northwest Airlines Flight 1086 scheduled to arrive in Philadelphia at 11:04 p.m., and that the passenger who was seen with the bag was an African American female. The fax further explained the background and training of Officer Hughes and the narcotic-detector dog.

Sergeant Kilrain, along with Officers McEwen, Jones, Perrone and Levins, all of whom were dressed in plainclothes, proceeded to the Philadelphia International Airport to investigate the tip. The officers confirmed that there was a Northwest Flight 1086 due to arrive at 11:04 p.m. from Houston, Texas, and waited in the baggage claim area for the flight to arrive. The flight arrived on time and, at approximately 11:10 p.m., Officer Levins observed a brown bag with a green stripe on the carousel and saw an African American female, later identified as Appellant, pick up the bag. There were no other bags on the carousel that matched the description given by Officer Hughes.

Officer Levins followed Appellant as she walked toward the exit door and noticed that Appellant had a claim ticket in her hand. He then approached Appellant, identified himself as a police officer, and asked if he could examine her claim ticket.

Appellant, who had her arm extended with her claim ticket in hand for inspection by airport personnel, did not retract her arm. Officer Levins then took the claim ticket, examined it, and noticed that it bore the claim number of 22–11–07. After verifying that the claim ticket number matched the number on the bag in Appellant's possession, Officer Levins asked Appellant to accompany him to an airport office that was approximately thirty feet from the baggage area.

Once inside the office, Sergeant Kilrain explained to Appellant that they had stopped her on suspicion that she was transporting drugs, and he gave her *Miranda*[1] warnings. Another officer and two airline employees were present in the room with Appellant, Officer Levins and Sergeant Kilrain. Sergeant Kilrain then asked Appellant for permission to search the bag. Although Sergeant Kilrain advised Appellant that she could refuse, he also informed her that if she refused to consent to a search of the bag, the officers would detain her in order to obtain a search warrant.[2] After reading a Consent

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. According to the testimony of Officer Levins, the exchange between the police officers and Appellant was as follows:

Like I said, [Sergeant Kilrain] told her that we believed she had narcotics in her suitcase. He then explained to her that, you know, we wanted to search her bag and it was totally up to her. She would have us get a search warrant for her bag or could sign a Consent to Search Form there, at which time we would open the bag at that point.

Q: Now what, if anything, was her response at that time?

A: At first, she was—it was quiet. She was very nervous. She thought about it for several minutes, and she decided, after about ten minutes, she would sign the Consent to Search Form and she did.

Notes of hearing, 5/4/95, p. 15. During cross-examination, Officer Levins further described the encounter with Appellant:

Q: You told her, look, either sign the form or we'll get a search warrant and you told her how long it would take to get a search warrant, is that correct?

A: We were very nice and polite to [Appellant] and explained everything to her and let her read the form and think about it and that's when she decided to sign.

Q: In thinking about it . . . you advised her if she didn't sign it, you will just get a search warrant anyway, but it might take some time, am I correct?

A: We would have to get a search warrant, yes.

to Search Form, and saying nothing for approximately ten minutes, Appellant permitted the search of her bag and signed the consent to search. Subsequent to searching the bag, the officers discovered three bricks of marijuana weighing a total of twenty-five pounds.

Appellant moved to suppress the contents of the bag, claiming that her apparent consent to the search was invalid. The trial court denied Appellant's motion. Appellant waived her right to a jury trial and on March 7, 1996, the trial court found her guilty of possession of a controlled substance. On April 16, 1996, the court sentenced Appellant to six to twelve months of incarceration. On appeal, the Superior Court affirmed in a 2–1 decision, finding that Appellant's consent to the search of her bag was valid.

■ The scope and standard of our review for the ruling of a suppression court are well settled. Where the record supports the factual findings of the court below, we may reverse the suppression ruling only if the legal conclusions drawn from those facts are in error. *Commonwealth v. Cleckley,* 558 Pa. 517, 738 A.2d 427, 429 (1999); *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111(Pa.), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

■ At issue presently[3] is whether Appellant validly consented to the search of her baggage when, prior to giving

*Id.* pp. 30–31.

3. In granting Appellant's Petition for Allowance of Appeal, we specifically limited our review to the question, "[d]id the Superior Court err in affirming the trial court's denial of [Appellant]'s motion to suppress evidence seized as a result of the search of her luggage, based on the court's determination that [Appellant] validly consented to the search of her luggage when, after confining her in the airport security office, the police told her that she could consent to an immediate search or they would get a warrant?" *Commonwealth v. Mack,* 564 Pa. 2, 764 A.2d 1 (2000).

In her appeal to the Superior Court, Appellant claimed that Officer Levins illegally "seized" her claim ticket and that the police illegally detained her when they escorted her to the airport office. The Superior Court rejected Appellant's claim that Officer Levins illegally searched her claim ticket and held that the police had probable cause to detain her. Due to the limited nature of our grant of allocatur, we must

her consent, the police advised Appellant that they would apply for a warrant if she denied them permission to search. As we stated in *Cleckley*, "[t]his court, as well as the United States Supreme Court, has long adhered to the principle that for purposes of the Fourth Amendment, consent must have been given voluntarily." *Cleckley*, 738 A.2d at 429. We further held in *Cleckley* that Article I, Section 8 of the Pennsylvania Constitution does not require that the Commonwealth establish a knowing and intelligent waiver of the right to refuse consent in order for the consent to be valid. The test for the validity of a consent to search is the same for both the Fourth Amendment and Article I, Section 8, i.e., that the consent is given voluntarily. *Id.* at 433. Accordingly, the Commonwealth must prove "that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 901 (2000).

Appellant contends that when the police present a suspect with the choice of consenting to a search or waiting under detention while the police apply for a warrant, the consent of the suspect is involuntary. In support of this argument, Appellant relies on *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In *Bumper*, the police approached the owner of a home where the suspect lived and informed her that they had a search warrant. After being told by the authorities that they had a warrant, the homeowner allowed them into the house, where the police discovered a rifle believed to be an instrument of crime. When the defendant moved to suppress the rifle, the prosecutor declined

accept the conclusions of the Superior Court that Officer Levins did not illegally obtain Appellant's claim ticket number and that the police had probable cause to detain Appellant. *See School District of Scranton v. Dale and Dale Design and Development, Inc.*, 559 Pa. 398, 741 A.2d 186, 189 n. 2 (1999) (lower court's determination final as to issues not included in allocatur grant). Consequently, we limit our decision today to reviewing the validity of Appellant's consent to search on the assumption that Appellant was subject to a lawful custodial detention (i.e., one supported by probable cause) at the time the police requested her consent to search.

to rely on the search warrant[4] and instead argued that the homeowner had consented to the search. The lower courts denied the suppression motion. The United States Supreme Court granted *certiorari* and reversed, holding that "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Bumper*, 391 U.S. at 550, 88 S.Ct. 1788.

We believe that *Bumper* is distinguishable from the instant case. In *Bumper*, the police represented that they were already in possession of a warrant and, consequently, the homeowner had no choice but to permit the officers to enter her home. Here, by contrast, the officers did not represent that they had a search warrant, such that Appellant's consent would be no more than acquiescence to lawful authority. Rather, the officers specifically informed Appellant that they did *not* possess a warrant and that she was free to decline permission to search her bag. When they simultaneously told her that if she refused to consent they "would have to get a search warrant," the officers simply advised her, truthfully, of the consequences of denying permission. We do not find Appellant's decision to allow the police to search her bag to be comparable to the situation of the homeowner in *Bumper* who, once told that the officers who wished to enter her house had a warrant, could not refuse.

We further reject the argument of Appellant that a consent to search in the context of a lawful custodial detention is *per se* involuntary when the police advise the suspect that they "would have to get a search warrant" if the suspect refuses to permit the search. Such a *per se* rule would make it impossible for the police to ask for consent to search whenever they have probable cause to detain the suspect and accurately advise the suspect of the consequences of refusing permission.

4. The record was not clear as to why the prosecution could not rely on the search warrant at the suppression hearing. *Bumper*, 391 U.S. at 550 n. 15, 88 S.Ct. 1788.

The statement by the police that they "would have to get a search warrant" is merely a factor, but not a dispositive one, in the totality of the circumstances that a court must review in determining whether the police coerced the individual into consenting to the search.[5]

Accordingly, we examine the situation of Appellant to determine whether, under the totality of the circumstances, her consent to the search of her suitcase was voluntary. Unquestionably, the police did more than we have previously required of them when they specifically advised Appellant that she had the right to refuse them permission to search. *See Strickler,* 757 A.2d at 901 ("while knowledge of the right to refuse consent to search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent"). Although the police informed Appellant that they "would have to get a warrant" if she refused her consent, this accurate statement informed Appellant of the true nature of her predicament, i.e., that she was not free to leave even if she denied the police permission to search. As such, it is not a coercive tactic by the police. Appellant waited ten minutes prior to signing the consent form, which indicates that her consent was the product of a considered deliberation. Furthermore, the police officers were polite and allowed Appellant time to decide without pressuring her with additional urging while she made her decision. These factors support the conclusion of the suppression court that Appellant voluntarily consented to the search of her bag.

We affirm the Judgment of the Superior Court.

5. Appellant alternatively advocates that we adopt a rule invalidating consent whenever the police inform a suspect that they "will" obtain a warrant, or where the police lack probable cause when they tell the suspect that they would apply for a warrant. The former situation, according to Appellant, is no different than the submission to lawful authority that the Court found vitiated any basis for consent in *Bumper;* the latter scenario is inherently coercive because the choice presented to the suspect is based on a false premise when the police lack the probable cause necessary to obtain a warrant.

We decline to adopt any of the bright-line approaches suggested by Appellant and leave to trial courts the determination of whether particular police conduct, in the circumstances of each case, is coercive.

Former Chief Justice FLAHERTY did not participate in the decision.

Justice SAYLOR files a Concurring Opinion.

Justice NIGRO files a Dissenting Opinion, in which Chief Justice ZAPPALA joins.

Justice SAYLOR, concurring.

I agree with the lead opinion's analysis distinguishing *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), rejecting a *per se* rule invalidating consents to search obtained during custodial interrogations, and applying a totality-of-the-circumstances approach in assessing the voluntariness of Appellant's consent to search in the present case. With regard to the totality assessment, however, although certainly the lead opinion aptly summarizes the range of non-coercive factors, I write because I believe that the coercive factors involved should be afforded substantial weight in these paradigms.

While an arrest does not *per se* render consent involuntary, *see United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976), it nevertheless militates against a finding of consent, making the Commonwealth's burden more difficult. *See Commonwealth v. Smith,* 470 Pa. 220, 228, 368 A.2d 272, 277 (1977) (explaining that "custody, while not determinative in itself, places a heavy burden in showing that consent was voluntarily given" and noting that "custody when coupled with other coercive factors, will normally necessitate the conclusion that the consent is not effective"). In this regard, numerous factors have been identified as bearing upon the voluntariness of consent,[1] and where an individual is in custody at the time he purportedly consents to a search, the environment attending the detention should also be considered

1. These circumstances include, among others, the existence of custody, duress, or coercive tactics by police; the defendant's education, sophistication, intelligence, and knowledge of his right to refuse consent; whether the defendant believed that no incriminating evidence would be discovered; and the extent and level of the defendant's cooperation with police. *See Commonwealth v. Cleckley,* 558 Pa. 517, 527 n. 7, 738 A.2d 427, 433 n. 7 (1999).

as integral to the totality assessment. *See generally United States v. Smith*, 260 F.3d 922, 924 (8th Cir.2001); 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT, § 8.2(b), at 646–47 (3d ed.1996) [hereinafter "LA-FAVE, SEARCH AND SEIZURE"]. The environmental considerations include, *inter alia*, whether the arrest was made with a display of weaponry or required the use of force against the defendant; whether the defendant was physically restrained; the, time and length of the detention; the location of the detention; and whether the custody was used as leverage in obtaining consent. *See id.* Additionally, a coercive dynamic has been discerned from the airport setting, *see, e.g., United States v. Worley*, 193 F.3d 380, 387 (6th Cir.1999) (quoting *United States v. Berry*, 670 F.2d 583, 596 (5th Cir.1982) (*en banc*)), albeit of a lesser degree than involved in stationhouse interrogation.

As with the circumstance of custody, a statement by police that they will obtain a search warrant if the defendant refuses to consent does not *per se* render the consent involuntary. *See generally* LAFAVE, SEARCH AND SEIZURE § 8.2(c), at 651 n. 77 (collecting cases); Note, *Consent to Search in Response to Police Threats to Seek or to Obtain a Search Warrant: Some Alternatives*, 71 J. CRIM. L. & CRIMINOLOGY 163, 165 n. 21 (1980) (same). The officer's statement should nevertheless be treated as a significant factor within the totality assessment, *see generally Stephenson v. State*, 494 S.W.2d 900, 904–05 (Tex.Crim.App.1973) (describing a police assertion that they would obtain a warrant as an important factor in the totality assessment), the weight of which may vary depending upon the language used by the officer. For instance, advising an individual that the police will seek or apply for a search warrant should be distinguished from a statement indicating that the officer will obtain a warrant. *See United States v. Boukater*, 409 F.2d 537, 538 (5th Cir.1969); *State v. Harmon*, 910 P.2d 1196, 1207 (Utah 1996).[2] In the latter circumstance,

---

**2.** While undue weight should not attach to distinctions based upon differences in semantics, the nature of the communication is a proper

the officer may be overstating his authority by suggesting that a search is inevitable and that the withholding of consent will be futile.[3] Of additional consequence, the existence of probable cause to support the issuance of a search warrant impacts upon the assessment of the statements made by the police. *See generally* LaFave, Search and Seizure § 8.2(c), at 653 nn. 83–84 (collecting cases and explaining that "[t]his proposition rests upon the conclusion that the 'threat' in such circumstances does not involve any deceit or trickery, but instead accurately informs the individual of his precise legal situation").

Here, although the police indicated that they "would" obtain a search warrant if Appellant declined to give her consent, I believe that probable cause existed to conduct a search based upon their corroboration of the information provided by the Houston Police Department and, significantly, the alert by the canine to the suitcase claimed by Appellant. *See United States v. Williams*, 69 F.3d 27, 28 (5th Cir.1995) (stating that "[a] drug-sniffing canine alert is sufficient, standing alone, to support probable cause to search").[4] More important is the effect of *Miranda* warnings upon the voluntariness of consent, as the police advised Appellant of her constitutional rights. Having been warned that anything she said could be used against her, Appellant's decision to sign the consent to search form, permitting the officers to inspect her suitcase and discover the incriminating evidence, is indicative of an absence of coercion. *Cf. United States v. Jones*, 475 F.2d 723, 730 (5th Cir.1973); *Commonwealth v. Pytak*, 278 Pa.Super. 476, 488, 420 A.2d 640, 646 (1980) (citing *United States v. Menke*, 468 F.2d 20 (3d Cir.1972), for the proposition that "the provision of

consideration within the totality assessment. *See United States v. Tompkins*, 130 F.3d 117, 122 (5th Cir.1997).

3. In my view, such a statement more closely parallels the situation in *Bumper*.

4. Other jurisdictions have been more circumspect, requiring the suppression court to consider the reliability of the canine in the probable cause analysis. *See State v. England*, 19 S.W.3d 762, 768 (Tenn.2000). Notably, the Houston Police Department supplied information concerning the background, training, and experience of the canine that was used in this case.

a *Miranda* warning alone, followed by a consent to search is not only persuasive but controlling on the question of voluntariness").

In summary, although affording substantial weight to the coercive dynamics involved, in light of the entire circumstances presented, I am able to join the disposition directed by the lead opinion.

Justice NIGRO, dissenting.

I dissent. Appellant was detained by the police and given no more than what amounted to a Hobson's choice—give consent to an immediate search of her bag or refuse to give consent, and have the bag searched anyway. Under these circumstances, where there was no true choice presented, I simply cannot agree with the majority's conclusion that Appellant's consent was constitutionally valid.

Under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, warrantless searches and seizures are unreasonable, and therefore prohibited, except for a few established exceptions, one of which is consent. *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031, 1034-35 (1997). In order for the consent to be valid, the Commonwealth must prove that the consent was the product of an essentially free and unconstrained choice, and not the result of duress or coercion, express or implied, or a will overborne. *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 901 (2000).

Here, at 7:00 p.m. the Houston Police Department notified the Philadelphia Police Department that a drug-sniffing dog in Houston had detected drugs in a piece of luggage on Northwest Flight 1086, scheduled to arrive in Philadelphia at 11:04 p.m. Five Philadelphia police officers went to the Philadelphia airport and waited for the airplane. Four hours after the Philadelphia police received the information from the Houston police, Appellant arrived in Philadelphia on Flight 1086 and claimed a bag matching the description given by the Houston police. Philadelphia Police Officer Michael Levins confronted

Appellant as she attempted to leave the airport, identified himself as an officer, and asked to see her baggage claim ticket. The officer took the claim ticket from her hand, picked up the bag, and asked her to accompany him to the airport security office.

Although the police did not formally arrest Appellant at that point, the record clearly establishes that from the time Appellant was escorted to the airport security office she was not free to leave.[1] (N.T., 5/4/95, at 35.) After confining her in the security office with three police officers and two airline employees, the police informed Appellant that she was suspected of carrying drugs in her bag, provided her with *Miranda* warnings,[2] interrogated her, and presented her with a consent to search form. The police told her that she could decide whether to sign the form, but that if she refused, they would simply get a warrant to search the bag. The police detained Appellant in the security office for over ten minutes until she agreed to sign the form.

If, as the Superior Court below concluded, the police had probable cause to arrest Appellant when they first approached her, they would have been justified in subjecting her person and her bag to a full search incident to arrest. *See Commonwealth v. Shiflet*, 543 Pa. 164, 670 A.2d 128, 130 (1995) (scope of search incident to arrest extends into the area within the arrestee's immediate control). The fact that the police did not

---

1. Pennsylvania case law recognizes three categories of interaction between police and citizens. *See In the Interest of S.J.*, 551 Pa. 637, 713 A.2d 45, 47 n. 3 (1998). The first of these is a "mere encounter," or request for information, which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. *Id.* The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. *Id.* Finally, an arrest or "custodial detention" must be supported by probable cause. *Id.* Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203, 206 (1994).

2. *See Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

arrest Appellant, however, can only lead to the conclusion that the officers did not believe they had probable cause prior to searching Appellant's bag.[3] It seems clear that the police believed they needed to obtain the suspected drugs in Appellant's bag in order to possess the probable cause necessary to arrest her. This presented an interesting dilemma for the police—they believed they needed to search Appellant's bag to obtain probable cause to arrest her, but in order to search her bag, they needed either probable cause for a warrant or consent to search. However, rather than following proper procedures to legally obtain access to Appellant's bag, the police, in my view, circumvented the law by inducing Appellant's consent to search her bag.[4] The police did not have a warrant, had not applied for one, and in fact, based on their conduct, did not even believe they possessed the probable cause necessary to secure one. Yet despite their apparent belief that they lacked probable cause, the police nonetheless told Appellant that, absent her consent to the search, they

3. The police obviously suspected that Appellant's bag contained drugs. Based on the information received from the Houston police, along with the other factors present, there was sufficient reasonable suspicion to justify an investigative detention of Appellant.

4. Although I am strongly in favor of the police having at their disposal the necessary law enforcement techniques and tools to effectuate arrests and protect the public from the scourge of illegal drugs, there are constitutional and procedural rules applicable to those techniques and tools which, if violated, render a search illegal. *See, e.g.*, Pa.R.Crim.P. 200–211 (governing issuance and execution of search warrants); *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 895–99 (1991) (tracing unique history of Pennsylvania's constitutional protection against unreasonable searches and seizures); *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283, 1291 (1979) (right to be free from unreasonable searches under the Pennsylvania Constitution is tied to the implicit right to privacy in this Commonwealth). I do not believe, however, that the guarantees against unreasonable searches and seizures should be curtailed as a means of increasing efficiency in law enforcement. *See Commonwealth v. Yastrop*, 564 Pa. 338, 768 A.2d 318, 357–61 (2001) (Nigro, J., dissenting) (efficiency of DUI roadblocks does not override the cumulative privacy interests of all motorists). *See generally* Steven Wisotsky, *Crackdown: The Emerging "Drug Exception" to the Bill of Rights*, 38 Hastings L.J. 889 (1987) (tracing the retreat from the historic constitutional mission of shielding citizens from governmental overreaching in the name of doing whatever is deemed necessary or expedient in waging the war on drugs).

would go ahead and get a warrant.[5] In doing so, the police conveyed the message that issuance of the warrant was inevitable and therefore, it was futile to deny permission to search. These circumstances make it abundantly clear that in the end, the police simply did not present Appellant with the true nature of her options, which served to eliminate any real choice Appellant had regarding her consent to the search and in turn, negated her constitutional right to refuse consent.

Furthermore, unlike the majority, I believe that *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), supports a conclusion that Appellant's consent was coerced. In *Bumper*, four police officers approached the owner of a home, the defendant's grandmother, and announced that they had a warrant to search her house. Although the officers did not produce a warrant, the homeowner allowed them into her home, where the police discovered a rifle believed to be an instrument of crime. The defendant moved to suppress the evidence seized, and the prosecution relied upon the alleged consent of the homeowner to justify the search.[6] The United States Supreme Court concluded:

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coer-

---

**5.** I believe it is significant that the police informed Appellant that if she did not consent to the search they would get a warrant, rather than stating that the police would have to attempt to secure a warrant if she declined consent. (N.T., 5/4/95, at 15, 29, 30–31.) The majority finds that the police advised Appellant that they would *apply* for a warrant if she denied them permission to search. Maj. Op., at 970 (emphasis added). However, based on the testimony of record, the police advised Appellant that she could sign the consent to search form or they would get a warrant. (N.T., 5/4/95, at 15, 29, 30–31.)

**6.** The majority states that the record is unclear as to why the prosecution in *Bumper* could not rely on the search warrant to justify the search. Maj. Op., at 6 n. 4. However, the prosecution, for unknown reasons, *chose* not to rely upon the validity of the warrant. *Bumper*, 391 U.S. at 546, 549–50, 88 S.Ct. 1788. In fact, the Supreme Court explained that no warrant was ever returned, and there is no way of knowing the conditions under which it was issued, or determining whether it was based on probable cause. *Id.* at 550 n. 15, 88 S.Ct. 1788.

cion. Where there is coercion there cannot be consent. We hold that [the homeowner] did not consent to the search, and that it was constitutional error to admit the rifle in evidence against the [defendant].

*Id.* at 550, 88 S.Ct. 1788 (citation omitted).

Like in *Bumper,* the police in the instant case claimed lawful authority to search Appellant's bag, thereby communicating to Appellant that she had no right to resist the search. The only difference is that the police in this case claimed they merely had to go get the warrant, at the expense of their time and trouble, whereas in *Bumper* the police claimed they already had the warrant in their possession. This is, however, simply a difference without distinction. The police in the instant case detained Appellant and told her that if she refused to consent to a search, they would simply go get a warrant. In my view, this is the type of coercive consent that *Bumper* forbids. Accordingly, I dissent.

Chief Justice ZAPPALA joins in this dissenting opinion.