J-A19008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　Appellant　　　　:
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
JUSTIN MITCHELL HAINES　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　Appellee　　　　　:　　　No. 1957 MDA 2017

Appeal from the Order Entered November 30, 2017
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0005514-2015

BEFORE:  GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:　　　　　**FILED OCTOBER 15, 2018**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the York County Court of Common Pleas, following remand, and reaffirming its decision to grant Appellee's motion to suppress.  We affirm.

In its original opinion, the trial court set forth the relevant facts and procedural history of this case as follows:

> [Appellee] is charged with the following offenses[:] (1) Murder of the Third Degree, 18 Pa.C.S.A. § 2502(c); (2) Aggravated Assault, 18 Pa.C.S.A. § 2702(a)(1); (3) Homicide by Vehicle While Under the Influence of Alcohol or Controlled Substance, 75 Pa.C.S.A. § 3735; (4) Aggravated Assault by Vehicle While Under the Influence of Alcohol or Controlled Substance, 74 Pa.C.S.A. § 3735.1; (5) Homicide by Vehicle, 75 Pa.C.S.A. § 3732; (6) Aggravated Assault by Vehicle 75 Pa.C.S.A. § 3732.1; (7) two counts of DUI, 75 Pa.C.S.A. § 3802(a)(1), (c); (8) Reckless Driving, 75 Pa.C.S.A. § 3736; (9) Careless Driving, 75 Pa.C.S.A. § 3714 (a); (10) Careless Driving−Unintentional Death, 75 Pa.C.S.A. § 3714(b); (11) Careless Driving−Serious Bodily

Injury, 75 Pa.C.S.A. 3714(c); and (12) Driving Vehicle at Safe Speed, 75 Pa.C.S.A. § 3361.

The incident that gave rise to these charges occurred in the early evening hours of February 8, 2015, in New Cumberland, York County, Pennsylvania at the intersection of Lewisberry and Poplar Road. According to the Commonwealth's testimony, this incident occurred as [Appellee] was traveling west on Lewisberry Road in his black Honda Pilot. The victims, Kyle Richard Quigley and his wife, Amy L. Marburger, were entering Lewisberry Road from Poplar Road in Mr. Quigley's White Honda Civic, when they were hit by [Appellee's] vehicle. Mr. Quigley, who was driving at the time of the incident, was ejected from his vehicle and later pronounced dead. Ms. Marburger sustained severe injuries, including, but not limited to, a brain injury, a shoulder injury, and internal injuries. Immediately following the incident, she was transported to Hershey Medical Center for treatment.

When [Sergeant] Timothy Dehoff and Sergeant Holland arrived on scene, they began the investigation of their reports. It was concluded that there were no adverse weather conditions and the roadway was dry at the time of the crash. Further, [Appellee] did not have any visual obstructions as he was traveling west on Lewisberry Road approaching Poplar Road.

[Sergeant] Dehoff spoke with [Appellee] on the scene after he was placed in the ambulance. [Appellee] advised [Sergeant] Dehoff he was heading home at the time of the incident after picking up food for his family. At that time, the [sergeant] smelled a strong order of alcohol coming from [Appellee's] breath and when asked, [Appellee] stated he had consumed one beer earlier that day.

[Appellee] was transported to Harrisburg Hospital for medical observation. [Sergeant] Dehoff drove to the hospital to determine if personnel were going to perform a medical blood draw on [Appellee]. Medical personnel informed [Sergeant] Dehoff that the hospital was not going to draw blood due to the lack of [Appellee's] significant injury. At that time, [Sergeant] Dehoff requested [Appellee] to submit to a blood chemical test to determine

his blood alcohol concentration ("BAC") based on the smell of intoxicants emanating from [Appellee's] breath. After being verbally advised of the warnings set forth on Penn-DOT's "DL-26" form, [Appellee] submitted to the test. The blood sample was sent to Quest Diagnostics for testing. [Appellee's] BAC was measured at 0.250%. As a result of these facts, the aforementioned charges were filed.

On June 29, 2016, [Appellee] filed a Motion to Suppress Evidence of Blood Results. On August 24, 2016, this [c]ourt held a hearing on the matter. Following the hearing, on September 1, 2016, [Appellee] filed a Memorandum in support thereof.

(Opinion in Support of Order Granting Defendant's Motion to Suppress Evidence of Blood Results, issued October 17, 2016, at 1-4). The trial court granted Appellee's motion and suppressed the BAC evidence. The Commonwealth appealed and, on August 2, 2016, this Court reversed and remanded with instructions for the trial court to make a factual determination of the voluntariness of Appellee's consent to the blood draw, *i.e.*, whether he consented before or after Sergeant Dehoff read the DL-26 form to Appellee.

Following remand, the trial court reaffirmed its decision to grant Appellee's suppression motion on November 30, 2017. The court stated it found Appellee had consented to the blood draw only after Sergeant Dehoff had read him the deficient DL-26 form. The Commonwealth filed a timely notice of appeal and Rule 311(d) certification[1] on December 18, 2017. The

_____

[1] Pursuant to Pa.R.A.P. 311(d), the Commonwealth has certified in its notice of appeal that the suppression order substantially handicapped or terminated the prosecution of the Commonwealth's case. Accordingly, this appeal is

court ordered the Commonwealth on December 19, 2017, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); the Commonwealth timely complied on January 3, 2018.

The Commonwealth raises one issue for our review:

> I. [WHETHER] THE TRIAL COURT ERRED IN GRANTING [APPELLEE]'S MOTION TO SUPPRESS HIS BLOOD ALCOHOL RESULTS, AS [APPELLEE] VOLUNTARILY CONSENTED TO HAVING HIS BLOOD DRAWN FOR PURPOSES OF BLOOD ALCOHOL TOXICOLOGICAL TESTING[?]
>
> > A. [WHETHER] THE TRIAL COURT MISAPPREHENDED THE FACTS OF RECORD IN FINDING [APPELLEE] DID NOT VOLUNTARILY CONSENT TO A BLOOD DRAW, BY:
> >
> > > i.  FAILING TO FIND THAT [APPELLEE] VOLUNTARILY CONSENTED TO A BLOOD DRAW WHILE NOT UNDER ARREST WHILE AT A HOSPITAL, WHERE HE WAS TRANSPORTED TO RECEIVE MEDICAL TREATMENT FOLLOWING HIS FATAL COLLISION, PRIOR TO BEING READ A PARTIALLY INACURRATE DL-26 FORM; [AND]
> > >
> > > ii.  FINDING THAT [APPELLEE] DID NOT VOLUNTARILY CONSENT TO A BLOOD DRAW BEFORE HE WAS READ A PARTIALLY INACURRATE DL-26 FORM, BUT MERELY ACKNOWLEDGED THE [SERGEANT'S] INTENTION TO READ [APPELLEE] THE PARTIALLY INACURRATE DL-26 FORM RATHER THAN CONSENTING TO THE BLOOD DRAW ITSELF[?]
> >
> > B. [WHETHER] THE TRIAL COURT MISAPPREHENDED THE LAW REGARDING THE VOLUNTARY CONSENT EXCEPTION TO THE SEARCH WARRANT REQUIREMENT, WHICH ALLOWS FOR A WARRANTLESS BLOOD DRAW, BY:

---

properly before us for review. *See **Commonwealth v. Cosnek**,* 575 Pa. 411, 836 A.2d 871 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion, or exclusion of Commonwealth's evidence).

i. FAILING TO CONSIDER AND ANALYZE THE LAW REGARDING THE VOLUNTARY CONSENT EXCEPTION TO THE SEARCH WARRANT REQUIREMENT;

ii. IMPROPERLY CONSIDERING THE LAW GOVERNING IMPLIED CONSENT AS [APPELLEE] EFFECTUATED VOLUNTARY CONSENT WITHOUT BEING PLACED UNDER ARREST AND PRIOR TO BEING READ A PARTIALY INACURRATE DL-26 FORM; [AND]

iii. MISAPPLYING ***BIRCHFIELD V. NORTH DAKOTA***, ___ U.S. ___[, 136 S.CT. 2160, 195 L.ED.2D 560] (2016) AND REDUCING THAT DECISION TO ESTABLISHING A MERE FORMALITY THAT IF A PARTIALLY INACURRATE DL-26 FORM IS READ, THEN A BLOOD DRAW IS CONSTITUTIONALLY INFIRM, REGARDLESS OF ALL OTHER FACTORS ESTABLISHING VOLUNTARY CONSENT[?]

(Commonwealth's Brief at 4-5).

The Commonwealth contends the trial court misapplied the holding of ***Birchfield, supra***. The Commonwealth agrees that, under ***Birchfield***, a defendant's consent is involuntary if it is given solely in response to an implied consent warning that the defendant's refusal to comply could result in enhanced criminal penalties beyond administrative sanctions, as such warnings are partially inaccurate. The Commonwealth, however, emphasizes that a voluntary consent to a blood draw may still exist under the totality of the circumstances, even if a police officer gave the partially inaccurate implied consent warnings. The Commonwealth insists the trial court failed to analyze the relevant factors which established the voluntariness of Appellee's consent under the totality of all the circumstances of this case. The Commonwealth highlights that: (1) Appellee was not under arrest; (2) Appellee was able to

understand what Sergeant Dehoff stated to him and responded appropriately; (3) Sergeant Dehoff informed Appellee of the purpose of the blood test; and (4) Appellee gave his consent by responding "okay." The Commonwealth argues that only after Appellee voluntarily consented to the blood test did Sergeant Dehoff read the partially inaccurate DL-26 form. Moreover, the Commonwealth criticizes the trial court's attempt to morph Appellee's voluntary consent to the blood test into a mere acknowledgement of Sergeant Dehoff's intent to read to Appellee the DL-26 form. The Commonwealth maintains that Appellee's understanding and agreement was purely to the performance of a blood test, not the reading of the DL-26 form. The Commonwealth concludes the trial court erred in again suppressing Appellee's BAC results and this Court should reverse that decision and remand for full prosecution. We disagree.

When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. As long as there is some evidence to support them, we are bound by the suppression court's findings of fact. Most importantly, we are not at liberty to reject a finding of fact which is based on credibility.
>
> The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Goldsborough***, 31 A.3d 299, 305 (Pa.Super. 2011),

*appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (internal citations and quotation marks omitted).

Under **Birchfield**, police can no longer conduct warrantless blood tests in Pennsylvania, based on implied consent laws which impose criminal penalties on a defendant's refusal to comply. **Birchfield, supra**. The taking of a blood sample constitutes a search within the meaning of the Fourth Amendment to the United States Constitution. **Id.** at ___, 136 S.Ct. at 2173, 195 L.Ed.2d at ___. Police may not compel the taking of a blood sample without a search warrant, unless an exception to the warrant requirement applies. **Id**. Implied consent laws which impose only civil penalties and/or evidentiary consequences for refusing to consent to a blood test are constitutional and permissible under the consent exception to the warrant requirement. **Id.** at ___, 136 S.Ct. at 2185, 195 L.Ed.2d at ___. On the other hand, implied consent laws which impose criminal penalties for refusal to comply are unconstitutional because "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." **Id.** at ___, 136 S.Ct. at 2186, 195 L.Ed.2d at ___.

"[E]ven though Pennsylvania's implied consent law does not make the refusal to submit to a blood test a crime in and of itself, the law undoubtedly 'impose[s] criminal penalties on the refusal to submit to such a test.'" **Commonwealth v. Evans**, 153 A.3d 323, 331 (Pa.Super. 2016) (quoting **Birchfield, supra** at ___, 136 S.Ct. at 2185-86, 195 L.Ed.2d at___).

A consensual search provides a legally recognized exception to the warrant requirement. ***Commonwealth v. Strickler***, 563 Pa. 47, 757 A.2d 884 (2000). As a general rule, "a search is reasonable when the subject consents…." ***Birchfield, supra*** at ____, 136 S.Ct. at 2185, 195 L.Ed.2d at____. "Whether an individual has voluntarily consented to a search is one of fact which must be determined in each case from the totality of the circumstances." ***Commonwealth v. Rosas***, 875 A.2d 341, 349 (Pa.Super. 2005), *appeal denied*, 587 Pa. 691, 897 A.2d 455 (2006).

"The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus." ***Strickler, supra*** at 56-57, 757 A.2d at 888-89.

> [T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. As noted, while knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account."

***Id.*** at 79, 757 A.2d at 901. "The test for the validity of a consent to search is the same for both the Fourth Amendment and Article I, Section 8, *i.e.*, that

the consent is given voluntarily." ***Commonwealth v. Mack***, 568 Pa. 329, 334, 796 A.2d 967, 970 (2002). When courts consider the "consent" to a chemical test, courts apply a similar standard:

> The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

***Commonwealth v. Smith***, 621 Pa. 218, 236, 77 A.3d 562, 573 (2013) (internal citations and quotation marks omitted).

Historically, a defendant who refused to comply with a request for a blood sample following the reading of the unamended Pennsylvania DL-26 form was subject to enhanced criminal penalties under 75 Pa.C.S.A. §§ 3803–3804. ***See generally Evans, supra***. After ***Birchfield***, however, Pennsylvania decided its implied consent statutes containing enhanced criminal penalties for refusal to take a blood test were also unconstitutional. ***See Evans, supra*** at 331 (holding Pennsylvania's unamended DL-26 form containing enhanced criminal penalties is now considered "partially inaccurate").

When a defendant gives consent to a blood test **before** being read the deficient Pennsylvania DL-26 form, the defendant's consent is voluntary as it

is "not tainted by the threat of additional criminal penalties as outlined in form DL-26, and therefore, [is] not obtained in violation of **Birchfield** and **Evans**." **Commonwealth v. Moser**, 188 A.3d 478, 483 (Pa.Super. 2018). When consent is obtained only **after** being read the deficient form, however, the defendant's consent is involuntary since "**Birchfield** makes plain that the police may not threaten enhanced punishment for refusing a blood test in order to obtain consent[.]" **Commonwealth v. Ennels**, 167 A.3d 716, 724 (Pa.Super. 2017), *appeal denied*, ___ Pa. ___, 182 A.3d 431 (2018).

Instantly, following remand, and in response to the Commonwealth's current complaints, the trial court reasoned:

> Upon this [c]ourt's thorough review of the transcript, we make a factual finding that [Appellee] did not consent to a blood draw before he was read the DL-26 form but, rather acknowledged Sergeant Dehoff's intention to read [Appellee] the form. In his own words, Sergeant Dehoff stated that prior to reading a DL-26 form to anyone he places under arrest for DUI, he first will "inform them what I am about to do." In this particular case, Sergeant Dehoff stated that he explained to [Appellee] that he was going to ask him to submit to a blood test to determine his blood alcohol level. Sergeant Dehoff testified that [Appellee] stated he understood.
>
> This [c]ourt does not consider [Appellee's] acknowledgment of what was about to happen, which was the reading of the DL-26 form to [Appellee], as a consent to have his blood drawn. Instead, this [c]ourt finds that [Appellee] did consent after he was read the DL-26 form by Sergeant Dehoff. Accordingly, because we find [Appellee] did not consent to the blood draw until after he was informed by Sergeant Dehoff that he would face enhanced criminal penalties if he refused to consent, and in light of **Birchfield,** [**supra**], we reaffirm our order filed on October 17, 2016,

> in which we granted [Appellee's] Motion to Suppress and suppressed [Appellee's] blood alcohol results.

(Trial Court Order, issued November 30, 2017, at 4-5) (most internal citations omitted). Here, this Court previously remanded the case for the trial court to make a factual finding on whether Appellee had consented to the blood draw before or after police warned him of the criminal consequences for refusal in the unamended DL-26 form. Upon remand, the trial court expressly determined that Appellee had consented to the blood draw only after the deficient DL-26 warnings. The court found that Appellee had not consented to the blood draw before the DL-26 warnings. Instead, Appellee simply acknowledged Sergeant Dehoff's intent to read the DL-26 form to Appellee and ask Appellee to submit to the blood draw. The threat of criminal penalties contained in the unamended DL-26 form read to Appellee constituted coercion under **Birchfield** and was unconstitutional. **See Birchfield, supra**; **Evans, supra**. As a result, the trial court reaffirmed its decision to suppress Appellee's BAC results. The record supports the court's decision, and we see no reason to disturb it. **See Goldsborough, supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2018