J-A26044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :          PENNSYLVANIA
           Appellee          :
                                   :
             v.                :
                                   :
AQUIL ALEXANDER            :
                                   :
          Appellant        :       No. 1979 EDA 2022

Appeal from the Judgment of Sentence Entered June 29, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0003707-2021

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                **FILED APRIL 11, 2024**

Appellant, Aquil Alexander, appeals *pro se* from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his bench trial convictions for persons not to possess firearms, carrying a firearm without a license, and possession of drug paraphernalia.[1] We affirm.

The relevant facts and procedural history of this case are as follows. At approximately 1:15 a.m. on August 9, 2021, Pennsylvania State Police Troopers Wendling and Worth conducted a traffic stop of Appellant's vehicle due to an expired registration.

> During the stop Trooper Wendling approached Appellant, the driver, and he could not provide title or registration information. Trooper Wendling noticed [a] "raw marijuana shake" in the console and observed Appellant was nervous

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 35 P.S. § 780-113(a)(32), respectively.

and speaking rapidly, and perspiring, and notably Appellant was moving around a lot in the driver's seat. He also observed Appellant moving his hand down underneath the front of the driver seat, and from his officer safety perspective, alerted his partner [that] he saw [Appellant] reaching down under the seat.

Trooper Wendling decided further investigation was needed to determine who is the owner of the vehicle and whether the vehicle was registered properly. Importantly, Trooper Wendling testified in addition to several violations of the vehicle code, he also was investigating Appellant for possession of marijuana and driving under the influence. Having unresolved answers to the question of registration and ownership of the vehicle, having perceived Appellant's nervousness, having observed the marijuana shake in the console, having concerns Appellant may have recently ingested the marijuana and may have been driving under the influence, and having observed the suspicious movements of Appellant in the driver's side of the vehicle, he requested Appellant to exit the vehicle and after about a minute Appellant got out of the vehicle.

Trooper Wendling asked Appellant about the presence of firearms in the vehicle and asked for consent to search the vehicle. Appellant said yes and consented to the vehicle search, and he started walking back to the car. Trooper Wendling became concerned Appellant was going to try to get away or retrieve something from the vehicle. He prevented Appellant from getting back into the vehicle, and Appellant began to cry and became very upset stating he did not want to go back to jail and admitting he was on state parole. Appellant calmed down a little, and [the trooper again] asked Appellant if he could search the vehicle and Appellant consented for the second time. Trooper Wendling thought Appellant's response [was] appropriate but "had never seen someone get so worked up as he did regarding … possibly getting found out for small amount of marijuana." Trooper Wendling was clear Appellant was not under arrest when he gave consent.

(Trial Court Opinion, filed 4/5/23, at 5-7) (record citations omitted).

During the subsequent search, Trooper Wendling discovered a loaded

- 2 -

firearm inside a backpack on the front passenger's seat. Trooper Wendling recovered a plastic vial "containing suspected raw marijuana residue" in the glove compartment. (Affidavit of Probable Cause, dated 8/9/21, at 2). The troopers also recovered a small amount of marijuana from Appellant's person.

The Commonwealth charged Appellant with various offenses related to his possession of the contraband. On January 13, 2022, Appellant filed an omnibus pretrial motion, which included a request to suppress the evidence seized from his vehicle. The court held a suppression hearing on February 15, 2022, and Trooper Wendling was the only witness to testify. On April 6, 2022, the court denied Appellant's suppression motion. Appellant filed a motion for reconsideration of the suppression ruling, which the court denied on April 13, 2022. Following a stipulated bench trial, the court found Appellant guilty of the aforementioned offenses. On June 29, 2022, the court sentenced Appellant to an aggregate term of seventy-two (72) to one hundred forty-four (144) months' imprisonment, followed by three and one-half (3½) years of probation.

Despite having counsel of record, Appellant timely filed a *pro se* notice of appeal on July 27, 2022. The court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On August 24, 2022, counsel filed an application to withdraw in this Court. Thereafter, this Court remanded the matter for the trial court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1998). Upon

remand, the court conducted the hearing and permitted Appellant to proceed

*pro se*.

Appellant now raises four issues on appeal:

> Did the trial court err as a matter of law in denying Appellant's omnibus pretrial motion to suppress evidence by not suppressing the marijuana, drug paraphernalia, and firearm in question when the trooper prolonged the traffic [stop] beyond its original mission, giving rise to a second investigative detention of Appellant?

> Was the trooper required to have articulable reasonable suspicion to prolong the traffic stop and ask for consent to search and/or conduct a search of Appellant's vehicle?

> Did the trooper have reasonable suspicion to prolong the traffic stop and ask for consent to search and/or conduct a search of Appellant's vehicle when he observed Appellant to be extraordinarily nervous … or fidgeting?

> Did the trooper have reasonable suspicion to prolong the traffic stop and ask for consent to search and/or conduct a search of Appellant's vehicle when he observed residue of a "green leafy substance" that was never tested or otherwise known to be an illegal substance at the time of observation?

(Appellant's Brief at 4-5) (unnumbered).

In his first, third, and fourth issues, Appellant asserts that the court erred in denying his suppression motion because the initial traffic stop escalated into an illegal seizure. Appellant argues that reasonable suspicion and exigent circumstances did not exist to support suspicion of any illegal activity other than the initial violation of the Motor Vehicle Code. Appellant emphasizes that his nervous behavior and the presence of alleged marijuana residue were insufficient to justify an extended period of detention. Appellant

concludes that the troopers conducted an illegal seizure by commencing an investigation, without reasonable suspicion, that was unrelated to the purpose of the original traffic stop. We disagree.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not

involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Bryant***, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting ***Commonwealth v. Phinn***, 761 A.2d 176, 181 (Pa.Super. 2000)).

An "investigative detention" is interchangeably labeled as a "stop and frisk" or a "***Terry*** stop." ***Commonwealth v. Brame***, 239 A.3d 1119 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 251 A.3d 771 (2021).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> \* \* \*
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

To ensure officers' safety during a traffic stop, police may order both drivers and passengers to exit the vehicle, even without reasonable suspicion that criminal activity is afoot. ***Commonwealth v. Malloy***, 257 A.3d 142, 150

(Pa.Super. 2021). During a traffic stop, the officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." ***Commonwealth v. Wright***, 224 A.3d 1104, 1109 (Pa.Super. 2019), *appeal denied*, 661 Pa. 533, 237 A.3d 393 (2020). "Further, 'if there is a legitimate stop for a traffic violation … additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions.'" ***Id.*** (quoting ***Commonwealth v. Chase***, 599 Pa. 80, 93 n.5, 960 A.2d 108, 115 n.5 (2008)).

Instantly, Trooper Wendling testified that he stopped Appellant's vehicle due to an invalid registration. Upon approaching Appellant's vehicle, Trooper Wendling observed "loose green leaves," resembling "raw marijuana shake," on the center console. (N.T. Suppression Hearing, 2/15/22, at 9). Trooper Wendling opined that the purported marijuana "could be indicative of recent marijuana use, so I might go into a DUI investigation at that point." (***Id.*** at 15). Trooper Wendling also noticed that Appellant spoke rapidly, was sweating, and moved around in his seat. Trooper Wendling suspected that Appellant was "nervous about something else that's in the vehicle." (***Id.*** at 10). Moreover, Appellant moved his hands underneath the driver's seat. Trooper Wendling explained that this movement raised concerns from "an officer safety perspective," because he did not know if Appellant was reaching for a weapon. (***Id.***)

After Appellant could not provide registration, Trooper Wendling asked him to exit the vehicle. Appellant took about one minute to exit, and it "[s]eemed like he was trying to delay … getting out of the car." (*Id.* at 12). With Appellant outside, Trooper Wendling asked if there were any firearms inside the vehicle. Trooper Wendling also asked for consent to search the vehicle. At that point, Appellant "started walking back to the car after saying yes, like he was debating what he wanted to do now." (*Id.* at 13). Based on Trooper Wendling's experience with traffic stops, he posited that Appellant "had no other reason for going back to that car [other] than to either get away or to retrieve something from the vehicle." (*Id.*) When the troopers prevented Appellant from getting back into the vehicle, Appellant began to cry. Trooper Wendling stated, "I've never seen someone get as worked up as he did regarding … possibly getting found out for—small amount of marijuana, or anything like that." (*Id.* at 16).

The suppression court concluded that Trooper Wendling's observations justified additional detention for further investigation. Our review of the record confirms that reasonable suspicion of new criminal activity arose before the initial traffic stop's purpose had been fulfilled, thereby justifying an additional period of detention. *See Wright, supra*. Specifically, reasonable suspicion existed due to: 1) Trooper Wendling noticing what appeared to be raw marijuana on the center console; 2) Appellant's nervous behavior and furtive movement; 3) Appellant's attempt to get back into the vehicle, and 4)

Appellant's emotional reaction to the troopers' refusal to permit his reentry. Under these circumstances, Trooper Wendling's specific observations led him to the reasonable conclusion that Appellant was involved in some type of criminal activity beyond the initial purpose of the traffic stop. *See Jones, supra*. Thus, Appellant is not entitled to relief on his claims.

In his second issue, Appellant acknowledges that he consented to the troopers' search of his vehicle. Appellant insists, however, he consented under duress because the troopers created a coercive atmosphere that made him fear for his safety. Additionally, Appellant maintains that his consent was uninformed because the troopers did not explain that he could refuse to consent, the consequences of consent, or the scope of the intended search. Based upon the foregoing, Appellant concludes that this Court must reverse the order denying his suppression motion. We disagree.

"Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Heidelberg*, 267 A.3d 492, 502 (Pa.Super. 2021) (*en banc*), *appeal denied*, ___ Pa. ___, 279 A.3d 38 (2022). "As a general rule, 'a warrant stating probable cause is required before a police officer may search for or seize evidence.'" *Id.* (quoting *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012)). Regarding automobiles, "Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment, and … the

Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." ***Commonwealth v. Alexander***, 664 Pa. 145, 151, 243 A.3d 177, 181 (2020).

"Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." ***Heidelberg, supra*** at 502 (quoting ***Commonwealth v. Whitlock***, 69 A.3d 635, 637 (Pa.Super. 2013)). "One such exception is consent, voluntarily given." ***Commonwealth v. Strickler***, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000). "Whether an individual has voluntarily consented to a search 'is [a question of] fact which must be determined in each case from the totality of the circumstances.'" ***Commonwealth v. Rosas***, 875 A.2d 341, 349 (Pa.Super. 2005), *appeal denied*, 587 Pa. 691, 897 A.2d 455 (2006) (quoting ***Commonwealth v. Mancini***, 490 A.2d 1377, 1383 (Pa.Super. 1985)).

"The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus." ***Strickler, supra*** at 56-57, 757 A.2d at 888-89 (internal citations and footnote omitted).

> [T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. As noted, while knowledge of the right to refuse to consent to the search is a factor to be

taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account.

*Id.* at 79, 757 A.2d at 901. "The test for the validity of a consent to search is the same for both the Fourth Amendment and Article I, Section 8, *i.e.*, that the consent is given voluntarily." ***Commonwealth v. Mack***, 568 Pa. 329, 334, 796 A.2d 967, 970 (2002).

Instantly, Trooper Wendling testified that Appellant consented to the search of his vehicle on two separate occasions. Initially, after Appellant exited the vehicle, Trooper Wendling asked Appellant, "May I search the vehicle?" (N.T. Suppression Hearing at 17). Appellant "said yes, and then he started walking back" to the vehicle. (***Id.***) After the troopers stopped Appellant from going back into the vehicle, Trooper Worth asked Appellant multiple times, "What do you have in the car?" (***Id.*** at 41). Appellant became emotional and denied having any contraband in the vehicle. Trooper Wendling described this exchange with Appellant as follows:

We were asking him, "What's going on, we're all humans here, what are you worried about," you know. It—I mean, when someone walks back to that car—you know, you didn't see me tackle him, you didn't see me put him in handcuffs.[2] He's still standing there, with his arms

---

[2] At the suppression hearing, the Commonwealth played a video from the motor vehicle recording device inside the troopers' vehicle. Although the

*(Footnote Continued Next Page)*

> crossed, you know? I treated him like a human being. You know, he's obviously upset, possibly violated his parole, so you know, we're—I'm being kind with him, I'm treating him like a human being. I'm not threatening him in any way. I'm not telling him, "You're going back to jail…."

(***Id.*** at 17). After Appellant calmed down "slightly," Trooper Wendling again requested consent to search the vehicle. (***Id.*** at 15). Appellant granted consent, and the troopers conducted the search.

On this record, the suppression court determined that "Appellant's consent, given two times, to the search of the vehicle was unequivocal, specific, and voluntary[.]" (Trial Court Opinion at 7). Our review of the record confirms this conclusion. We emphasize that Appellant did not present any evidence to dispute Trooper Wendling's rendition of what occurred during the traffic stop. Trooper Wendling's uncontroverted testimony established that Appellant voluntarily consented to the search during a constitutionally valid citizen/police interaction. ***See Stricker, supra***. Although the troopers' initial questioning and request for consent caused Appellant to start crying, this response constituted a disproportionate reaction to the interaction. Thereafter, the troopers waited for Appellant to regain his composure before asking for consent a second time. Absent more, we cannot say that Appellant's consent was anything other than the product of an essentially free and unconstrained choice. ***See id.*** Thus, Appellant is not entitled to relief on

_____

Commonwealth entered this video into evidence, it was not included with the certified record on appeal.

his claim, and the court properly denied the suppression motion. Accordingly,

we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/11/2024